## MERCANTILE TRUST Co. *v.* MISSOURI, K. & T. RY. Co. *et al.*

## FIDELITY INSURANCE, TRUST & SAFE DEPOSIT Co. *v.* EAST LINE & RED RIVER R. Co. *et al.*

### (*Circuit Court, N. D. Texas.* June 6, 1890.)

1. FEDERAL AND STATE COURTS—CONFLICTING JURISDICTION—RAILWAY MORTGAGES—FORECLOSURE.
   An interstate railway company purchased a small road lying entirely within a state, and afterwards mortgaged the whole system, including the new purchase. After several years, suit to foreclose was brought in the federal circuit court, and the whole property was placed in the hands of a receiver. In the mean time, by proper proceedings in the state court, the charter of the state road was declared forfeited, and a receiver of its property appointed. This receiver then petitioned the federal court for possession, alleging that the sale of the road was *ultra vires* and void, and that, therefore, the federal court had no jurisdiction. *Held,* that this merely raised the question as to the validity of the sale, which question could properly be tried in the federal court, and hence it would retain possession.

2. SAME.
   The fact that the mortgagees of a prior mortgage, which was placed upon the state road before its sale, had intervened in the federal court for the protection and enforcement of their prior lien, was also a sufficient ground for retaining jurisdiction and possession of the road.

3. SAME—FOLLOWING STATE LAWS.
   The fact that the state statutes provide for the payment of the corporation's debts after its charter is forfeited, and for the distribution of its assets, does not give the state courts exclusive jurisdiction, since these directions will be complied with in the federal courts.

In Equity. Petition by W. M. Giles, who was appointed receiver of the East Line & Red River Railroad, in a proceeding in the state court of Texas to forfeit its charter, to obtain possession of the road as against receivers appointed by the federal court. Petition denied.

*Alexander & Green* and *E. Ellery Anderson,* for Mercantile Trust Co.

*James Hagerman,* for receivers of Missouri, K. & T. Ry. Co.

*Simon Sterne* and *Charles F. Beach, Jr.,* for Missouri, K. & T. Ry. Co.

*John C. Bullitt* and *Samuel Dickson,* for Fidelity Insurance, Trust & Safe-Deposit Co.

*R. C. Foster,* for East Line & Red River R. Co.

*Sawnie Robertson,* for W. M. Giles, receiver.

Before MILLER and LAMAR, Justices, and PARDEE and CALDWELL, JJ.

MILLER, Justice, (*orally.*) We have given this application our attentive consideration, and, as there is no difference of opinion among the four judges who have been asked to consider the case, there is no reason

to delay the decision in order to deliver a well-prepared opinion. This is a petition brought by Mr. W. M. Giles, who is the receiver of the state court in Travis county, Tex., to obtain possession of a railroad and its appurtenances constructed and lying within the state of Texas, which railroad is now and has for some time been in the hands of the receivers of the circuit court of the United States for the district of Texas and of the circuit court of the United States for the district of Kansas. These receivers, who now have possession of the road, are the receivers under proceedings against what is called the "Missouri, Kansas & Texas Railway Company," which proceedings were to foreclose large and extensive mortgage or mortgages upon that road. That road itself—at least in its running connections, and in the control of lines of road which it had—commenced somewhere in the state of Missouri, I think, on the Mississippi river, running south-westerly through the states of Missouri and Kansas, the Indian Territory, and through the state of Texas to the Gulf, practically the line of road known as the "Missouri, Kansas & Texas Railway," and owned by the company having that name. June 6, 1888, a proceeding was commenced by a corporation called the "Mercantile Trust Company," which was the trustee of the mortgage on all that road, to foreclose it for failure to pay installments of interest. That proceeding resulted in the appointment of receivers to take charge of the whole line of road above mentioned. Of course, as the road lay in different districts, some kind of proceeding was necessary by which the action of the courts which might have control of the road should be simultaneous and harmonious. Therefore the order for the appointment of these receivers was made in the circuit court of the United States for the district of Kansas and in the circuit court of the United States for the district of Texas. Those proceedings, in the course of two or three years, culminated in a final decree, which was rendered within the last two or three months in the circuit court for the district of Kansas, (36 Fed. Rep. 221, 41 Fed. Rep. 8,) and which was also rendered in the circuit court for the district of Texas, ordering the property to be sold to pay the mortgage which was the foundation of the original suit. It is not material to go into that decree further than to say that the mortgage which was sought to be foreclosed covers also a road in Texas called the "East Line & Red River Railroad," and this was ordered, by the decree which has been mentioned, to be sold as a part of the property of the Missouri, Kansas & Texas Railway Company, in satisfaction of the bonds given with the mortgage, which included that road among all the other property of the mortgagor. This East Line & Red River Railroad Company was a corporation organized by the state of Texas, and had built a road, or mostly built it, about 150 miles long, exclusively within the state of Texas, and which company attempted to make a sale of its road to the Missouri, Kansas & Texas Railway Company. It did make such sale, so far as a form of contract and conveyance, by use of words and instrumentalities to make conveyance, could do so.

It is denied by the petitioner in this case that it had the power or authority to make such a sale, and it is denied that the Missouri, Kansas

& Texas Railway Company had the power to buy. This piece of road, it should be observed, was bought before the Mercantile Trust Company's mortgage was made, which is in process of foreclosure now, and in which suit this application is made by way of intervention. We are not inclined to say decisively whether the two roads had the power to make this sale and transfer or not. We do not think it necessary, as that question is not raised in the case before us. It is very clear that the Missouri, Kansas & Texas Railway Company, for seven or eight years before these foreclosure proceedings commenced, had possession of the road, which it had bought. It is very clear that it thought it had made a valid purchase of that road. It is very clear that neither that railway company itself, nor any of its stockholders, are known to have made any objection to that sale, or to have taken any steps whatever up to the present hour to set it aside; that original railway company or some of its officers were made parties to this foreclosure proceeding; they had an opportunity to contest the right of the Missouri, Kansas & Texas Railway Company to make this mortgage covering their road. They made no objection. The argument of the petitioner here is that because the sale of the Texas road to others was forbidden by the laws of Texas, or was without sufficient authority under those laws, therefore the circuit courts of the United States, in the proceedings for foreclosure of the mortgage of the Missouri, Kansas & Texas Railway Company, were without any jurisdiction over that piece of road, or over the mortgage which covered this property. We think that that is a mistake. Every suit which is erroneously brought on the supposition that the plaintiff is entitled to the property, and that the defendant is not entitled, would, according to that rule, be without jurisdiction. Suppose suit is brought in ejectment for a piece of land. The defendant says, "You cannot sue me; I don't own the land; you have no jurisdiction over me." Who would listen a moment to any objection of that kind? It is the business of the court to determine whether a lawful claim is set up or not, and the trial of that question cannot be defeated by simply saying, "You have no right to the property you claim; you have no right to sue me for it."

Take these principles as applied to the case before us. The Missouri, Kansas & Texas Railway Company has had possession of the road for many years. It mortgaged that road. The parties to whom it was mortgaged advanced their money on it. They seek to get their money back by a suit for foreclosure of that mortgage. The Missouri, Kansas & Texas Railway Company does not deny the jurisdiction of the court. The East Line & Red River Railway Company does not deny the jurisdiction. But a third person comes here and says, "You have no jurisdiction over this case because the Missouri, Kansas & Texas Railway Company never owned this road." The reply is, "That is the very question to be tried; that is the thing in issue here. If the Missouri, Kansas & Texas Railway Company, or any one else interested in it, or anybody having a right to represent it, chooses to contest it, here is the place to contest it." The plaintiffs say, "We have taken a valid mort-

gage on it." The Missouri, Kansas & Texas Railway Company says, "Yes, we owned the road and mortgaged it." The other company says nothing. But, put it in the best possible position. Suppose that the East Line & Red River Railroad Company should then set up in that cause the very thing which the applicant here now sets up,—that it never sold its road. What is to be done about it? Would the court dismiss it for want of jurisdiction? On the contrary, the court would have jurisdiction to try that question, and it would try it. That is the only answer on that branch of the subject that we choose to make to the application here, in which it is proposed, in this short and summary way, to take the property out of the hands of the officers of the courts of the United States on the ground that those courts had no jurisdiction. It seems to be contended by counsel on the one side that those courts had no jurisdiction, while the counsel on the other side say that it had. We are very clear, whatever may be the rights under the original sale, that the circuit court of the United States for the district of Texas had jurisdiction of that case, has jurisdiction of it now, and will have jurisdiction until these proceedings are ended in some way. '

There is another objection to the application which is clearer than that. Whatever may be the difficulty about the sale of the road and its effect upon the jurisdiction of the court, there is no question that the Fidelity Insurance, Trust & Safe-Deposit Company of Philadelphia had a valid mortgage on this piece of road before it came into the hands of the Missouri, Kansas & Texas Railroad Company, and, as the first mortgagee, has the first equitable right to that road or to have it disposed of for the payment of its debt. It is shown that that debt has all become due— *First,* because the interest was not paid according to the contract, and, *second,* because the trustees or owners of the bonds exercised their privilege of declaring that all the principal was due for non-payment of interest, so that the whole sum is now due; and that road, if it stood alone, is liable to the proceeding instituted by the Fidelity Company to foreclose its mortgage and secure its debt. That company, finding itself in that position, with its debt due, none of its interest paid, and its property about to be sold under another mortgage later in date, bestirs itself to protect its rights. It finds the railroad, which is its security, in the hands of the receivers of the circuit court of the United States. It finds that the company which made the mortgage to it is insolvent. It is useless to sue that company. Its remedy is a proceeding to hold that road which the petitioner is seeking to have placed in his hands for the debt due to the Fidelity Company. Not one of us has any doubt as to the proper course. They cannot fly in the face of authority. They do not want to sue the Missouri, Kansas & Texas Railway Company; it has nothing. They do not want to sue anybody who has no control of or interest in the company. So we must say the present petitioners wisely come to the court which has possession of the property, and ask to be permitted to intervene for the protection of their rights. The Fidelity Company do not want the property taken out of the possession of this court, and turned over to Mr. Giles, the receiver in the state court suit.

They resist that, because they feel that the property is safer where it is. They have security in the decree which has already been rendered, that on the sale of that property their priority of right will be recognized. They are therefore satisfied, and do not want to be turned over to the state court, which has made no such regulation, and with which they have nothing to do, and never had anything to do.    Therefore we think it very clear that this road, being in the hands of receivers, and those receivers having, by the express order of the court appointing them, powers extending to the protection of the rights of the Fidelity Company, cannot be taken out of the hands of those receivers for the purpose of turning it over to the state jurisdiction, which has not recognized any such rights as seen in some way to pertain to the owner of the property. These are the defenses, properly speaking, to the petition of the plaintiff.    We are agreed that the plaintiff has no superior right or authority to the possession of this property, even upon his own showing, to the rights as established by the proceedings in the circuit court of the United States.

Under the judicial proceedings in the state courts against the corporation called the "East Line & Red River Railroad Company," in a *quasi* criminal proceeding to forfeit its charter rights, to clear it away as an incumbrance of the ground, we regard it as having no longer the authority which the state had once given it to build a line of railroad.    Mr. Robertson's language may be as strong as he chooses to put it, so far as that railroad company is concerned, to show that it has been rendered as dead as possible, and we have no doubt that has been done.    But when it is urged that under the statutes of Texas, which give this right to pursue a corporation, and take away its charter, and put an end to its corporate existence, there is also coupled with that right some instruction about what is to be done with the property of the company, and what is to be done about its debts, and that, therefore, that jurisdiction with regard to those debts, with regard to the disposition of its property and with regard to the rights of its stockholders and of its creditors, is an exclusive jurisdiction,—when all this is urged, you cannot, therefore, oust other courts that have jurisdiction, and especially if they have commenced proceedings and taken possession of the property, because we may also, in addition to declaring the charter forfeited, dispose of its assets.    With regard to questions of that kind, cases have been before us so often that it is hardly worth while to cite authorities.    There is hardly a state in the Union that does not provide for the administration of a dead man's assets in a particular court, an orphans' court, a surrogate's court, or under whatever name the court may be established. Those are the courts invested with the power of administering upon the estates of decedents, and there is never any difficulty about them, with reference to any other court having jurisdiction, except that in some cases chancery has ancillary jurisdiction.    But suppose a man who lives outside of the state where these surrogates' courts are established says, "I am the owner of that piece of property which you are seeking to administer upon; I bought it and paid my money for it; and, although

the man who is dead may have been in possession under claim of title, yet it is mine." Is he bound by the administration of the surrogate's court? Has he no remedy? Must he stand by and let that court do what it will? Is he bound to submit his rights to that probate court? Manifestly not. We have decided in a half a dozen instances that he can come to the courts of the United States, and assert any right that he has, provided the law for the administration of the estate, as prescribed in the statutes of the state, be observed. That law is as capable of enforcement and as likely to be enforced correctly in the courts of the United States as in the courts of the state. Aside, therefore, from all questions about priority of dates, whether the receivers were appointed in these cases before proceedings were had in the Texas courts to dissolve the corporation, we are of opinion that the circuit courts of the United States had jurisdiction of the question of the foreclosure of this mortgage, of the right to sell that property in satisfaction of debts, and that the nature of the proceedings in the state courts of Texas gave no superior rights to those courts to interfere and have the property withdrawn from their exclusive jurisdiction. The result of all these considerations is that we are of opinion that the petitioner makes no case which authorizes the circuit court of the United States in Texas to turn over to him the property which he asks. His petition to that effect must be dismissed.

Of course it is proper to say that, while four judges have taken part in this hearing, this was done by request of counsel, and that the decree of judgment can only become valid upon its being entered by the judge holding the proper court in the circuit court of the United States for the district of Texas. It seemed, however, to be the wish of counsel, and of Judge PARDEE and of Judge CALDWELL, that they should have the benefit of the judgment of all the judges in the two circuits (the fifth and eighth) where this property is found and in whose courts it is held, and that they should all unite in hearing this case. We are glad to say that our opinion is unanimous, and at the proper time that Judge PARDEE will properly have entered an order denying the prayer of this petition.