STATE OF TEXAS et al. v. PALMER et al.

(Circuit Court of Appeals, Fifth Circuit. December 3, 1907.)

No. 1,721.

**1. COURTS—PRIORITY OF JURISDICTION—APPOINTMENT OF RECEIVER.**

Where the relief in aid of which the appointment of a receiver is sought is such as cannot be obtained except by an actual seizure of the property, as the enforcement of a lien thereon, the actual seizure is not necessary to give the court jurisdiction over the property to the exclusion of all other courts, but an order appointing the receiver is an assumption of possession by the court equivalent to an actual seizure.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1345–1347.]

**2. SAME—FEDERAL AND STATE COURTS.**

In cases where a state court and a United States court may each take jurisdiction of property, the one which first gets jurisdiction holds it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1345–1355.

Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

**3. SAME—EFFECT OF SUPERSEDEAS.**

A district court of Texas appointed a receiver for all the property within the state owned by a foreign corporation, on application of the state, which had recovered judgment against the corporation for penalties for violation of a statute, and also enjoined the defendant from removing any of its property from the state. The receiver qualified and gave bond, but did not take actual possession of the property; the defendant appealing at once from the order, as permitted by Rev. St. Tex. 1895, art. 1383, and giving a supersedeas bond as provided for by article 1404. *Held* that, under such statute as construed by the highest courts of the state, the supersedeas did not operate to vacate the appointment of the receiver, but merely to suspend his functions, nor to deprive the state courts of their exclusive jurisdiction over the property of the corporation, which was only transferred from the district court to the appellate court pending the appeal, and that a federal court was without jurisdiction to appoint a receiver for the same property at suit of a stockholder pending such appeal.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

R. V. Davidson, D. W. Doom, T. W. Gregory, and G. W. Allen (Jewel P. Lightfoot, Jno. W. Brady, Gregory, Gregory & Batts, Allen & Hart, and D. H. Doom, on the brief), for appellants.

S. B. Cantey, E. B. Perkins, H. O. Head, and John D. Johnson, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a suit in equity brought by Bradley W. Palmer, a citizen of Massachusetts, against the Waters-Pierce Oil Company, a corporation organized under the laws of Missouri. The appeal to this court is from two decrees of the Circuit Court—one an interlocutory decree appointing a receiver, and the other a decree refusing to vacate the order appointing the receiver. The case involves questions relating to the jurisdiction of the courts of the state

of Texas and to the custody and control of the property of the Waters-Pierce Oil Company, which can be best stated after briefly showing the proceedings in the state courts and in the Circuit Court.

On September 26, 1906, the state of Texas brought suit in the district court of Travis county, Tex., to forfeit the permit of the Waters-Pierce Oil Company to do business in that state, and to recover of it penalties for violations of the Texas anti-trust statutes. On June 1, 1907, judgment was rendered for the state, canceling the company's permit. Verdict and judgment were also rendered in favor of the state and against the company for $1,623,900. On the same day, after the rendition of the judgment, the state presented to the district court an application for the appointment of a receiver of all the property of the company situated in Texas, and for an injunction to prevent the company's removing its property from the state. To show the need of a receiver and an injunction, it was alleged that the charter of the company had been forfeited by legal proceedings in Missouri; that the judgment in favor of the state of Texas cannot be collected outside of the state, and that the property of the company in the state is not sufficient to pay the judgment; that the property is in part movable property, and, if carried out of the state, could not be secured to satisfy its judgment; that the state has a lien on the company's property to secure the judgment by virtue of the act of the Legislature of Texas approved April 11, 1907; that the judgment of forfeiture prevented the company from doing business in the state; and that it was necessary, to protect the rights of the state, that the business of the defendant should continue, at least temporarily. This application for a receiver and an injunction being presented to the judge of the district court, he ordered, on June 1, 1907, that notice be given the company, and that it be set down for hearing June 8, 1907. On June 10th, the hearing having been passed to that day, the court granted the application for an injunction and for the appointment of a receiver, but did not name a receiver. On June 13th, Robert J. Eckhardt was named as the receiver, and his bond fixed at $250,000. The company gave notice that it would appeal, and, on June 15th, the district court fixed $100,-000 as the amount of the bond which the company was required to give to supersede the order appointing the receiver. The company was in court contesting these orders. On June 19th, Eckhardt gave bond, which was approved, and he qualified as receiver. He did not take actual possession of the company's property. On the day last named, June 19, 1907, the company appealed to the Court of Civil Appeals from the order of the district court appointing the receiver, giving the required supersedeas bond. The Court of Civil Appeals, on October 23, 1907, handed down an opinion and entered judgment affirming the decree of the district court appointing Eckhardt receiver. Waters-Pierce Oil Company v. State of Texas (Tex. Civ. App.) 105 S. W. 851. The judgment of forfeiture of the company's permit was rendered, as we have said, and the judgment for $1,623,900 entered on June 1, 1907; and on June 15th, the company appealed from that judgment, giving a supersedeas and appeal bond, approved on that day, for $3,275,000. On this appeal we are not advised that there has been any decision. On June 19, 1907, Bradley W. Palmer filed the original

bill in this case in the Circuit Court of the United States for the East-
ern District of Texas against the Waters-Pierce Oil Company.   For
the purposes of this decision, it is only necessary to show some of
the leading features of the bill and the object of the suit.   The com-
plainant sues as a stockholder of the company, owning 100 shares, and
avers that the corporation owns both real and personal property situat-
ed in Texas which exceeds $1,000,000 in value.   The bill recites elab-
orately and in detail the proceedings in the District Court of Travis
county, Tex., which we have briefly stated.   It copies, in part, the
anti-trust laws of the state of Texas, averring that they are, in cer-
tain respects, in conflict with the Constitution of the United States.   It
is alleged that the laws of Texas did not authorize the judgment for
the amount of penalties as entered in the state court, nor authorize the
appointment of a receiver of the property of the oil company by the
state court.   It is further alleged that an appeal was taken by the com-
pany from the order appointing a receiver to the Court of Civil Ap-
peals, the company giving a supersedeas bond, and that the judgment
was superseded, and that the judgment and all things incident thereto
were removed to the Court of Civil Appeals.   The appeal from the pen-
alty judgment to the Court of Civil Appeals is also described.   These
appeals, it is alleged, superseded the appointment of the receiver.   The
business and property of the company is described, and facts are al-
leged tending to show why the United States court should appoint a
receiver.   The prayer is for the appointment of a receiver to take pos-
session of all the company's property in Texas; that the business of
the company may be wound up and its property sold; that the receiver
be authorized to manage and operate the property, etc.   The Waters-
Pierce Oil Company waived service of subpœna on June 19, 1907,
and admitted the averments of the bill, and on the same day the Cir-
cuit Court appointed Chester B. Dorchester receiver, with the usual
powers and authority of receivers in such cases.   The decree provides
that other parties interested may intervene, and, on June 19th, H. C.
Pierce intervened, alleging he was a stockholder, and repeating, in
substance, the averments of the original bill, and asking for the same
relief.   On the next day Dorchester qualified and gave bond as receiv-
er.   On June 21, 1907, the state of Texas and Robert J. Eckhardt, the
receiver appointed by the district court of Travis county, applied to
the Court of Civil Appeals, reciting the action of the several courts
herein, and asked that court for relief against the receiver appointed
by the United States court, and that the state court would make such
orders as would protect and preserve its jurisdiction.   The Court of
Civil Appeals considered the application and handed down an opin-
ion June 28, 1907 (Waters-Pierce Oil Company v. State of Texas
[Tex. Civ. App.] 103 S. W. 836), and pursuant to its opinion, the
court made an order directing Eckhardt, as receiver, in conjunction
with the state of Texas, to appear before the Circuit Court of the Unit-
ed States for the Eastern District of Texas, "and there, by suits, pleas,
and applications, urge and insist upon the rights of the state and the
jurisdiction of this court in and to and over the property in contro-
versy, and to ask for such orders, decrees, and judgments as they may
deem necessary and proper, and to appeal and perfect such appeals

and writs of error as they may deem proper and necessary." On July 1, 1907, the state of Texas and Robert J. Eckhardt, as receiver, applied to the United States Circuit Court, stating the foregoing facts, and moved the court to set aside and annul its orders in reference to the receivership, and that Chester B. Dorchester be discharged as receiver and instructed to return the property of the company to the custody and control of the state courts, and that the jurisdiction of the state courts be recognized. On July 15th, the Circuit Court refused to grant the prayer of the state of Texas and Eckhardt. The order recites as a fact that Robert J. Eckhardt has never taken nor had actual possession of any of the property of the Waters-Pierce Oil Company under the order appointing him receiver, and that Chester B. Dorchester has actual possession under the order appointing him receiver, and the application is overruled without prejudice to any further application that may be made. The appeal to this court by the state of Texas and Eckhardt, as receiver, is taken from the order of June 19, 1907, appointing Chester B. Dorchester receiver, and from the order of July 15, 1907, refusing to vacate the order appointing Dorchester receiver. The making of each order is assigned as error.

The first question presented by the record is whether or not the proceedings in the district court of Travis county, Tex., were such as to confer on it exclusive jurisdiction of the property involved. And, if that question is answered in the affirmative, the second question is whether or not such exclusive jurisdiction was lost by the superseding of the order of the state court appointing a receiver.

The district court of Travis county is a court of general jurisdiction of both law and equity cases. The suit brought by the state of Texas in that court against the Waters-Pierce Oil Company was for the double purpose of forfeiting the permit of the company to do business in Texas, and to obtain a judgment for penalties against the company on account of violations of the Texas anti-trust laws. The proceedings resulted in a judgment for the state of Texas, forfeiting the permit to do business and for penalties to the amount of $1,623,900. In Texas there are no separate state courts of equity, and there is no practice in the state courts requiring equitable remedies to be administered on bills in equity as in the federal courts. The practice is to administer both legal and equitable remedies on petition, stating the facts and asking for relief. Having obtained this judgment, the state of Texas filed in the court its petition seeking the equitable relief of enforcing an alleged lien upon the property of the company, the appointment of a receiver to take possession of the property, and an injunction to prevent the removal of the property from the state. The petition contained a statement of facts, which, if true, would authorize the court to grant the relief prayed for. Its averments are similar to those of bills in equity in aid of suits at law praying for the appointment of a receiver and the granting of an injunction, but in form the petition conforms to the practice prevailing in Texas. Notice of the petition was given the Waters-Pierce Oil Company, and it appeared. The petition was set down for hearing. After a brief postponement, a hearing was had; both parties to the proceeding being in court. The district court made and entered a formal order or decree appointing

a receiver and fixing his bond. The receiver appeared in the district court, qualified, and gave the bond required by the order, and the bond was approved by the court. All these things occurred before any application was made to the United States court. Everything had been done that could be done to perfect the jurisdiction of the district court and to establish its custody and control of the property of the Waters-Pierce Oil Company, except that the receiver had not obtained the actual possession of the company's property. There has been a contrariety of opinion as to when, in a case like this, the jurisdiction which secures priority attaches. Cases may be found holding that it attaches when invoked by the filing of the bill; others, that it is determined by the priority of the service (Gluck & Becker on Receivers of Corporations [2d Ed.] 99); and others, by the priority of the order appointing a receiver, which, Mr. Thompson says, is "tantamount to an actual judicial seizure of the property" (5 Thompson on Corporations, § 6855). Here we are not disturbed by these nice distinctions, for the jurisdiction was invoked by the filing of the petition, the issuance of notice, its service, and the formal order appointing the receiver and granting the injunction. Nothing was lacking to complete the actual custody of the property except the manual seizure of it by the receiver of the state court. The relief sought by the petition for a receiver in this case is clearly such as cannot be obtained except by an actual seizure of the property, because one of the purposes is to enforce an alleged lien on the property. In such cases the actual seizure of the property is not necessary to give the court jurisdiction to the exclusion of all other courts. Farmers' L. & T. Co. v. Lake St. E. R. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; Adams v. Mercantile Trust Company, 66 Fed. 617, 621, 15 C. C. A. 1.

In cases where a state court and a United States court may each take jurisdiction, the one which first gets jurisdiction holds it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted. If jurisdiction as to the property attaches, it is exclusive till it has wrought its function. No other court of concurrent jurisdiction has the right to interfere with the property within the custody and control of the court first obtaining jurisdiction. Taylor v. Taintor, 16 Wall. 366, 370, 21 L. Ed. 287; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390. This principle is recognized in authorities too numerous for citation as one which is essential to the dignity and authority of every court, and essential also to the comity which should control the relations between courts of concurrent jurisdiction. A federal court, in a case where the possession of the thing in suit is necessary to the granting of the relief sought, after it has assumed jurisdiction, issued a subpœna in equity, caused it to be served, set the cause down for hearing, and made an order appointing a receiver, would not permit a state court to interfere with its jurisdiction over the property embraced by the order. The whole power of the federal government, if necessary, would sustain the court in maintaining its exclusive jurisdiction. The United States courts should willingly give the same exclusive effect to proceedings in a state court of concurrent jurisdiction that they claim for such proceedings in federal courts. The rules on the subject must be reciprocal oth-

erwise they will not produce that concord and harmony that is so essential to the effective and satisfactory enforcement of the law.

We now come to the consideration of the second question, relating to the effect of the supersedeas. The following is the Texas statute authorizing the giving of supersedeas bonds:

"Should the appellant or plaintiff in error, as the case may be, desire to suspend the execution of the judgment, he may do so by giving, instead of the bond or affidavit in lieu thereof, mentioned in the four preceding articles, or in addition to such bond, a bond with two or more good and sufficient sureties, to be approved by the clerk, payable to appellee or defendant in error, in a sum at least double the amount of the judgment, interest and costs, conditioned that such appellant or plaintiff in error shall prosecute his appeal or writ of error with effect, and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against him, he shall perform its judgment, sentence or decree, and pay all such damages as said court may award against him." Rev. St. Tex. (1895) art. 1404.

Article 1383 of the Revised Statutes of Texas of 1895 allows an appeal from an interlocutory order of the district court appointing a receiver, "but the proceedings in other respects in the court below shall not be stayed during the pendency of the appeal, unless otherwise ordered by the appellate court." Before the action of the Circuit Court in appointing a receiver, the Waters-Pierce Oil Company appealed from the judgment for penalties, giving a supersedeas bond for double the amount of the judgment, which was approved. The condition of the bond is that "the Waters-Pierce Oil Company shall prosecute its appeal with effect, and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against it, it shall perform its judgment, sentence or decree, and pay all such damages as said court may award against it." The Waters-Pierce Oil Company also appealed to the Court of Civil Appeals from the order appointing a receiver, and gave bond for $100,000, the amount fixed by the court, "conditioned that the said Waters-Pierce Oil Company, appellant, shall prosecute its appeal with effect, and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against it, it shall perform its judgment, sentence or decree, and pay all such damages as said court may award against it, and further conditioned that the said Waters-Pierce Oil Company, appellant, shall, in case the judgment is affirmed, pay to the state of Texas, appellee, the value of the rent or hire of all such property embraced in the orders and judgments aforesaid in any suit which may be brought therefor." After fixing the supersedeas bond relating to the order the district court added:

"It is further ordered that, upon the approval by the court and the filing with the clerk by defendant of a good and sufficient bond, conditioned as required by law, for said amount, further proceedings herein be suspended pending appeal; but this order and such appeal shall not affect or rescind the order heretofore entered, prohibiting and enjoining the defendant, its servants, officers, agents and attorneys from removing any of its property or assets beyond the limits of the state of Texas, but said injunction shall remain in full force and effect, pending the appeal from the order appointing a receiver herein."

It was held by the Texas Court of Civil Appeals in Carter v. Carter, 40 S. W. 1030, that the appeal and the supersedeas bond had the

effect of suspending the order appointing a receiver. This view was reaffirmed by the same court in Hill v. Halliburton, 32 Tex. Civ. App. 21, 73 S. W. 21, the court also holding that, after the supersedeas bond is approved, the jurisdiction of the case belongs to the Appellate Court. And in People's Cem. Ass'n v. Oakland Cem. Co., 24 Tex. Civ. App. 668, 60 S. W. 679, it was held, if, after the appeal and supersedeas, the property has been surrendered to the receiver, the defendant superseding the order is entitled to be placed in possession of it. These cases merely show that, pending the appeal, action under the order appointing the receiver is not permitted. They do not show that the receiver is discharged by the appeal. The jurisdiction of the case passes by the appeal to the appellate court, and the receiver remains in office, but with his right to act suspended. As was said by the Texas court in San Antonio St. Ry. Co. v. State, 38 S. W. 54, at page 59:

"The appeal from the trial court removed the cause from that court, and placed it, with the parties, as well as the subject-matter of the litigation, wholly within the jurisdiction of this tribunal; but the judgment of the district court is not affected by the appeal further than that the proceedings to enforce it are stayed, a supersedeas bond having been filed."

The decisions of the Supreme Court of Texas fully sustain this view. The jurisdiction of the state courts is not lost or abandoned by appeal and supersedeas. In such case, the jurisdiction and authority over person and property passes to the appellate court, and an injunction granted by the district court becomes the injunction, in effect, of the appellate court, and that court has ample power to enforce and protect its jurisdiction, and to prevent, on proper application to it, the waste or destruction of property within its custody and jurisdiction. Churchill v. Martin, 65 Tex. 367; Wells v. Littlefield, 62 Tex. 28; G., C. & S. F. Ry. v. F. W. & N. O. Ry., 68 Tex. 98, 2 S. W. 199, 3 S. W. 564. See, also, Waters-Pierce Oil Company v. State of Texas (July 28, 1907; Tex. Civ. App.) 103 S. W. 836. It seems to us clear that no jurisdiction acquired by the state courts was abandoned or lost by the appeal. It is a mistake to assume that the supersedeas proceedings discharged the receiver. His activities are suspended, but he is not discharged. The order appointing him is not vacated, for, on affirmance of the order, he does not have to be reappointed. He has been, pending the appeal, and he remains, a qualified and bonded officer of the state court. The suspension of the order by the appeal and supersedeas permits the defendant to resume or continue in the possession of the property covered by the order, but his possession is subject to the orders and jurisdiction of the state court. One of the conditions of the bond given is that the principal obligor shall perform the "judgment, sentence or decree" of the appellate court. There is nothing in the statute nor in the Texas cases construing it to indicate that the supersedeas bond is a substitute for the property embraced in the order appointing the receiver. This is true, also, as to the supersedeas bond given in the main case to supersede the judgment for the penalties. The condition of that bond shows that it is not a substitute for the property impounded, nor is it security for the penalties sought to be collected.

There is another feature of this case that makes clearer our conclusion that the property remains within the jurisdiction and control of the state court. In this case, at the time the receiver was appointed, an injunction was issued enjoining the Waters-Pierce Oil Company, its servants and agents, from removing any of its property or assets beyond the limits of the state of Texas. This injunction remains in force by the terms of the supersedeas order.

The case of Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660, cited by the learned counsel for the appellee, is not, in our opinion, applicable to the facts of the case at bar. A court of concurrent jurisdiction was allowed to intervene and take possession of property by its receiver in that case, because the first court taking possession of it by its receiver "accepted a bond in lieu of the property and discharged the receiver * * *." In the case at bar, no bond has been accepted in lieu of the property, nor has the receiver been discharged. The case here is, in principle, more like Hagan v. Lucas, 10 Pet. (U. S.) 400, 9 L. Ed. 470, where the claimant gave bond and received possession of the property; but the bond not being accepted in lieu of the property, the court held that the claimant's "custody is substituted for the custody of the sheriff," and that the property was not withdrawn from the custody of the law.

The act of June 6, 1900 (31 Stat. 660, 1 U. S. Comp. St. 1901, p. 550), allowing appeals from interlocutory orders by federal courts appointing receivers, contains the proviso:

"That the appeal must be taken within thirty days from the entry of such order or decree, and it shall take precedence in the appellate court; and the proceedings in other respects in the court below shall not be stayed, unless otherwise ordered by that court, or by the appellate court or a judge thereof, during the pendency of such appeal."

It will be observed that the language is in substance the same as that used in reference to a stay of proceedings by the Texas statute (Rev. St. Tex. 1895, art. 1383), which allows appeals from an order appointing a receiver. Where a United States Circuit Court has taken jurisdiction and appointed a receiver of the property of a corporation, and an appeal has been taken and a stay of proceedings allowed, would it recognize the right of a state court of concurrent jurisdiction to intervene and take charge of the property at the suit of a stockholder of the corporation? Unless that would be permitted, the federal courts should not so interfere with the Texas state courts under the same circumstances.

The interlocutory order appointing a receiver is reversed and vacated, and the case remanded for further proceedings not inconsistent with the opinion of this court, and with instructions to discharge Chester B. Dorchester as receiver, and to tax all the costs of the receivership against Bradley W. Palmer, the complainant.

NOTE.—The following is the opinion of Bryant, District Judge, in the Circuit Court, in equity:

BRYANT, District Judge. The state of Texas sued the Waters-Pierce Oil Company in the district court of Travis county, in which suit is sought to recover penalties prescribed by the statute for violation of the anti-trust law, and to revoke the permit of said company to do business in Texas.

June 1, 1907, a verdict was rendered in said cause in favor of the state of Texas, for the sum of $1,623,900, and canceling the permit of the company to do business in the state. June 1, 1907, the Attorney General filed an application in the district court of Travis county, praying that a receiver be appointed to take charge of all the property of the Waters-Pierce Oil Company situated in Texas and such as might come into said state. June 13, 1907, said district court appointed Robert J. Eckhardt receiver, and said Eckhardt qualified in accordance with the laws of Texas. The defendant filed a motion for a new trial, which motion was overruled. Thereupon it gave notice of appeal, and filed a supersedeas bond in accordance with the Texas statute, which bond was duly approved by the clerk of the district court of Travis county. June 15, 1907, the district court of Travis county fixed the sum of $100,000 as the amount of the bond which the defendant was required to give in order to perfect its appeal from the order appointing the receiver and supersede said order. In due time the defendant gave such bond, which was approved by the clerk of the district court of Travis county, and thereupon the court entered an order that proceedings in the receivership matter should be stayed pending the appeal, but stipulated and provided that the giving of such bond and the approval of the same should in no manner affect or revoke the injunction theretofore granted, prohibiting the defendant, its officers, agents, and employés, from removing beyond the limits of the state of Texas any of the property of said company, but that said injunction should remain in full force and effect, notwithstanding an appeal had been taken and supersedeas bond given. June 19, 1907, Bradley W. Palmer, a stockholder of the Waters-Pierce Oil Company, filed his bill in equity in this court, setting up the proceedings above detailed; that the case was pending on appeal; that both the judgment appointing a receiver and the judgment for penalties in favor of the state had been superseded and rendered inoperative by reason of the supersedeas bond mentioned; that if the judgment was affirmed the company would be compelled to pay the amount of the judgment, and alleged the fact to be that the Thirtieth Legislature of Texas has passed an act by which it was made a felony for any person to work for a trust or any company which had been adjudged to be a trust, which law would be effective July 12, 1907, and that in consequence thereof it would be impossible for the Waters-Pierce Oil Company to transact its business, and that its physical property, amounting to $1,000,000, situated in the state of Texas, would be practically destroyed, and that its trade-marks and business rights which had been built up, if properly preserved, were worth the sum of at least $1,000,000 more, which would be practically, if not totally, destroyed in value, if the business had to be closed and the property could not be used and cared for. By reason of these matters he applied to the court for an order appointing a receiver to take charge of the property of the Waters-Pierce Oil Company, and preserve it for the benefit of the state of Texas, in the event said judgment should be affirmed, and to save such remnant as might be left of the property for the benefit of the stockholders. The defendant, Waters-Pierce Oil Company, appeared by answer and admitted the truth of the allegations set up in the bill, and joined in the application for the appointment of a receiver. After full agreement and close examination of the authorities relating to the questions involved, this court appointed C. B. Dorchester receiver to take charge of all the property of the Waters-Pierce Oil Company in Texas, with the usual powers of a receiver to manage and control the property, sell oils, and do all things necessary to keep it a going concern. Thereafter the Attorney General filed an application before the Court of Civil Appeals for the Third Supreme Judicial District of Texas, praying that court to appoint a receiver to take charge of the property, that Dorchester be restrained from acting, and for general relief. That application was heard, and the opinion of Chief Justice Fisher thereon was as follows:

"Order made Friday, June 28, 1907. Waters-Pierce Oil Company v. State of Texas. No. 4179. Opinion of Chief Justice Fisher, 105 S. W. 851.

"In this case came on to be heard the application of the state of Texas and Robert J. Eckhardt, receiver, in the matters and things therein presented, which, after hearing, was duly considered by the court, and conclusion reached that the relief in part prayed for, to the following extent, be granted, which is embraced in the following order: It is ordered that the receiver, Robert

J. Eckhardt, and the state of Texas, through its attorneys, be requested and directed to appear before the Honorable Circuit Court of the United States for the Eastern District of Texas, and there, by suits, pleas and applications, urge and insist upon the rights of the state, and the jurisdiction of this court, in and to and over the property in controversy, and to ask for such orders, decrees and judgments as they may deem necessary and proper, and to appeal and perfect such appeals and writs of error as they may deem proper and necessary. The other matters of relief prayed for and in the amended application thereto, which is set out in the opinion of the court, are hereby continued for consideration and determination to the next term of this court."

Thereafter the state of Texas filed in this court an application to vacate the order appointing C. B. Dorchester receiver, and to refer the controversy to the decision of the state courts. The motion of the state sets forth in detail all the proceedings above mentioned, and we have deemed necessary to give only such statement as will make intelligent to the reader the questions presented.

The prayer of the motion is as follows:

"Wherefore, the state of Texas and the said Robert J. Eckhardt, receiver of the Waters-Pierce Oil Company, respectfully move the court to set aside and annul all of its orders and decrees entered in this cause appointing a receiver, or in any manner relating thereto; that the said receiver, C. B. Dorchester, who was appointed receiver herein, be discharged finally as such receiver; that the said Dorchester be instructed and directed to return the property and assets of the state court, and the jurisdiction of the latter court recognized."

The hearing of this motion was begun on July 9th, and full argument was made by counsel representing all interests as they appear. The contention of the state of Texas is that the United States court was without jurisdiction or power to appoint a receiver, because, they contend, the Waters-Pierce Oil Company was in the custody of the state court, and no other court had power to interfere with it in any manner whatever. This contention was based upon the proposition that the property was in custodia legis, and, as it was a suit to forfeit the permit to do business in Texas, to that extent, at least, it was a proceeding in rem. It will thus be seen that the principal question for decision is: "Did the district court of Travis county, by reason of the acts done, have the exclusive jurisdiction, upon the grounds stated, of the property of the Waters-Pierce Oil Company, and was this court without jurisdiction to appoint a receiver?"

The right to appeal and give a supersedeas bond is fixed by article 1383 of the Revised Statutes of Texas of 1895, as follows:

"An appeal or writ of error may be taken to the Courts of Civil Appeals from every final judgment of the district court in civil cases, and from every final judgment in the county court in civil cases, of which the county court has original jurisdiction, and from every final judgment of the county court in civil cases, of which the court has appellate jurisdiction, where the judgment or amount in controversy exceeds one hundred dollars, exclusive of interests and costs, of the district court appointing a receiver or trustee in any cause, provided said appeal be taken within twenty days from the entry of said order; and appeals in such cases shall take precedence in the appellate court, but the proceedings in other respects in the court below shall not be stayed during the pendency of the appeal, unless otherwise ordered by the appellate court." Acts 1892, p. 42, c. 17.

This is the article of the Texas statute under which the supersedeas bond was given and appeal taken from the order appointing the receiver. This statute has received judicial construction by the courts of this state upon three different occasions. The first time the court was called upon to construe it was in the case of Carter v. Carter (Tex. Civ. App.) 40 S. W. 1030. That was a suit for divorce filed in Dallas county, and also for a partition of the community property. The case having been continued for the term, upon the application of the plaintiff, the court appointed a receiver to take charge of the community property, fixed his bond at $1,000, and directed him, upon qualifying as receiver, to take possession of the property. The defendant excepted to the action of the court in appointing such receiver, gave notice of appeal to the appellate court of that division, and promptly perfected his appeal by filing his supersedeas bond in the sum fixed by the order of the court. The receiver

duly qualified, executed the bond required, and was proceeding to execute his trust in conformity with the order of his appointment, when an application was made by appellant for an order from the appellate court restraining the receiver from interfering with the property pending the appeal from the order appointing him such receiver. The court in passing upon the statute said: "The question presented is: Does the appeal under the supersedeas bond in the sum fixed by order of the court suspend the order appointing the receiver pending the appeal?" and after discussing the statute, and the manner of its wording, comes to the conclusion that the order was suspended by the appeal, and that the restraining order prayed for should issue. In that case, instead of the receiver being allowed to take possession of the property, he was restrained from taking possession of it. The statute came again before the Court of Civil Appeals at Dallas for construction in the case of People's Cemetery Ass'n et al. v Oakland Cemetery Company et al., 24 Tex. Civ. App. 668, 60 S. W. 679. In that case a receiver was appointed by the district court of Dallas county by an interlocutory order, and on the same day of his appointment the receiver qualified and demanded of the association that it turn over to him the property designated in the order, which demand was promptly complied with. January 7, 1901, the association gave due notice and proper notice of appeal to the Court of Civil Appeals from the order appointing the receiver, and on the same day perfected its appeal by filing in the court below a supersedeas bond in amount fixed by the court, which bond was duly approved. Thereupon the association demanded of the receiver the property that had been turned over to him, which demand was refused, whereupon the appellant filed a motion in the appellate court asking that the receiver be required to restore its property. In this case it was contended that the appeal did not vacate, but only suspended, the receivership, and that the receiver should be permitted to hold the property coming to his hands until the appeal was determined. The court held that the effect of the appeal was to supersede the order of appointment and everything done thereunder, and that appellant was entitled to demand the status quo as it existed at the time the order was made. The court say: "To hold otherwise would give validity and effect to the order appealed from, and destroy the right given to the defendant by the statute to supersede such order. It is settled in Carter v. Carter, supra, that the receiver cannot act pending the appeal. Generally, the property involved is of such a nature that it cannot be passively held without injury or loss. So, if we concede the proposition that a receiver who has gotten possession of the property before the appeal is perfected may hold it in spite of the appeal, we would have the anomaly presented of requiring him to hold property which ought to be actively managed or operated, and refusing him permission to so manage or operate it. Beach, Rev. pp. 127–129." Among other things, the court used this language: "The right to the possession of its property being secured to it by the giving of the supersedeas bond, it is immaterial whether such possession would be beneficial. The right is a legal one, and must be recognized and enforced."

This statute came before the Court of Civil Appeals at Galveston for construction in the case of Hill et al. v. Halliburton et al., 32 Tex. Civ. App. 21, 73 S. W. 21. This was a case pending in the district court at Beaumont, and was an application for the appointment of a receiver concerning waste oil on "Spindle Top," and, after hearing, the judge appointed a receiver, who qualified by giving bond, etc. Thereupon the receiver demanded of the defendant the possession of the property, which demand was complied with and the property delivered over to him. The district court fixed the supersedeas bond at the sum of $100,000, and the defendant tendered a bond to the district clerk in accordance with the order of the court fixing the amount of the bond, which bond was duly approved by the clerk. The court gave notice, and fixed a day for the parties to appear before him, stating that the object was to erase the approval of the clerk from the bond, and that he had directed that the bond be approved only by the court, and that the receiver should have five days time in which to accurately measure and ascertain the amount of oil that the defendants had on hand, and which the receiver was to receive under his order. These matters did not appear in the order of the court prior to the time the bond was approved, but did appear in the subsequent order, and the court

stated that the declaration had been made orally from the bench at the time of the appointment of the receiver. The defendants applied to the Court of Civil Appeals at Galveston, the case being returnable there, for a writ of injunction against the district judge to prevent his erasing the approval of the clerk to the bond, and also praying for the restoration of the property to their possession. These were the vital points raised in the case. The appellate court held that the clerk had the right to approve the bond, and not the judge. They use this language: "It was not within the power of the judge to suspend the appeal by an order directing the bond to be presented to him for approval, or that it should be held up until the receiver could make an inventory of the property, for, when the steps to perfect the appeal were complied with, the jurisdiction of the district court ceased, and that of this court attached, and, when the order was made, it was the right of the defendants to perfect the appeal at once."

The above are the only decisions of the Texas courts of which I am aware construing that section of the statute, and the right under it to give a supersedeas bond. These authorities hold the law to be that, when a receiver is appointed by the district court, and the party excepts and appeals from such order, and gives a bond in the sum fixed by the order of the court, which bond is approved by the clerk, the functions and control of the receiver cease pending the appeal, and that the defendant is entitled to the possession of his property, whether it has been taken by the receiver or not, and that it is not a matter of grace, but of legal right.

It will thus be seen by the authorities cited that, without dissent or conflict in any way whatever, the courts of Texas, passing upon this question, have decided the first contention of the state against it. These authorities lay down the rule to be that the possession of the property is not in the court or under its control, but is in the defendant as fully as if the receiver had never been appointed. The receiver was appointed by the state court upon the application of the state, based upon the ground that the state had recovered a judgment; that the property of the defendant in the state was inadequate to pay the judgment, and therefore a receiver was necessary to seize and hold the property in order to protect the state in the collection of its judgment. While the case was in this condition, the defendant appeared and tendered a bond in accordance with the statute of the state of Texas in double the amount of the principal, interest, and costs of the state's claim, and, instead of having imperfect security, the state was given perfect security for the collection of its judgment, and in the manner provided by law. In addition to this, the Waters-Pierce Oil Company gave a bond in the sum of $100,000, being the amount fixed by the court, in order to suspend the powers of the receiver to act pending the appeal. Both these bonds were passed upon by the clerk of the district court of Travis county, who, under the law, is the only one who has the right to determine whether or not the security offered is good. He decided the security was good, and therefore approved the bonds, and, when the bonds were thus approved, the necessity for the appointment of the receiver ceased. The authorities all hold that his powers to act do cease, whether the court has ordered it or not; and, in addition thereto, the district court that created the receiver entered the decisions of this state, and, under the act of the court appointing the receiver, it is established that the custody of the property was in the Waters-Pierce Oil Company, and that the receiver appointed by the state court could not act.

The only remaining contention of the state that need be considered is that, because it was a suit to forfeit the permit of the Waters-Pierce Company to do business in Texas, it was therefore a proceeding in rem. It does not seem to me that it can be seriously contended that the institution of a suit under the Texas statute to forfeit the charter of a corporation conflicts with the power of a federal court to take charge of its property and operate it during the pendency of a suit in the state court, notwithstanding the statute under which the forfeiture suit is instituted provides for the enforcement of the judgment, when rendered, through the instrumentality of a receiver. That there is no such conflict in such case is well settled by Texas decisions. City Water Co. v. State, 88 Tex. 600, 32 S. W. 1033; Water Co. v. City of Palestine, 91 Tex. 540, 44 S. W. 814, 40 L. R. A. 203. These two cases were suits upon the part of the

state to forfeit the charters of the respective water companies. The properties of the water companies were in the hands of receivers appointed by federal courts, and when the question reached the Supreme Court for decision they held that the suits to forfeit the charters could proceed in the state courts, and at the same time the property could be administered by the federal courts through a receiver, and that it did not involve a conflict of jurisdictions. I can see no difference between a suit to forfeit a permit to do business and a suit to forfeit a charter which secures a right to do business, and therefore it seems to me that the contention of the state in this case is conclusively settled by the decisions of the state courts, and adverse to the contention of the state made in this motion. It also seems to be well settled that the fact that state statutes provide for winding up the affairs of a dissolved corporation through the instrumentality of a receiver to be appointed by the court decreeing the dissolution does not exclude other courts of concurrent jurisdiction. Mercantile Trust Co. v. M., K. & T. Ry. Co. (C. C.) 48 Fed. 355.

In the argument on the motion to vacate the receivership I have been told that it is my duty to follow the construction of state statutes placed upon them by state courts of last resort. I recognize this rule fully, and, in acting in this case, I acted in reference to the state of adjudication on this question as it then existed. The courts of last resort in this state had established the rules that any defendant for whose property a receiver had been appointed had the right to appeal from such order, to give the security fixed by the court, and, when he had done so, his property should be returned to him absolutely, and the order appointing the receiver was, at least, inoperative. It appears to me that they announce the doctrine that the powers of the receiver cease, and that the adverse party takes the security which the law furnishes, and the defendant takes his property with the right to use, control, and dispose of the same.

In this case it is claimed that, by the act of the Thirtieth Legislature, effective April 11, 1907 (Laws 1907, p. 175, c. 87), the state has a lien upon the property. In order to understand the state's case, it must be borne in mind that the original suit filed did not assert a lien, and when it was instituted no such lien existed, but, pending the litigation, the act of the Thirtieth Legislature was passed, which provides that the state shall have a lien upon the property of trusts, etc. The suit upon the part of the state was not one having for its object the sequestration of the property of the defendant, or affecting the title to the same. It was to recover a money judgment fixed by the statute for violation of the anti-trust law of the state, and also the cancellation of the permit of the Waters-Pierce Oil Company to do business in Texas. It proceeded on that theory to final judgment. After the verdict had been rendered, the Attorney General filed in court an application for the appointment of a receiver, and in that application, for the first time, asserted a lien and recited the fact of the judgment and its amount, and that there was a suit pending in the state of Missouri for the forfeiture of the charter of the Waters-Pierce Oil Company, and that it had been recommended by the Supreme Court of Missouri, under their practice, that the charter of the Waters-Pierce Oil Company should be canceled; and then sets forth that the penalties recovered in this case by the state of Texas could not be collected outside of the state of Texas, and that the property of the defendant situated in the state of Texas, as plaintiff is informed and believes, is totally inadequate to pay the judgment, and that the great bulk of the property in Texas, belonging to the defendant, subject to the payment of said judgment, consists of current accounts with merchants and dealers in the state of Texas, of tank cars, of money on hand, of oil that is easily removed, practically the whole of it being personal, movable property, and, if carried beyond the limits of the state of Texas, cannot be pursued by the state, and the state would have no way of collecting its judgment; that under and by virtue of an act of the Legislature of the state of Texas, approved April 11, 1907, the state has a lien upon all of said property to secure the payment of the above-mentioned judgment. It also prayed that the receiver be allowed to take the business and keep it a going concern. I mention these matters to show that the suit of the state of Texas was strictly a personal action, and was not a proceeding in rem in any respect whatever. If there was any res involved in it, or that could be claimed to be involved in it,

it was only the right or permit to do business in the state. It is a principle of law generally, if not universally, recognized that, when a court of equity has before it a proceeding for the purpose of appointing a receiver to take charge of the property of a defendant for the benefit of all parties at interest, and has taken into its actual possession the property for that purpose, no other court will interfere with the jurisdiction so acquired. I have universally recognized this rule, and observed it perhaps with a greater degree of strictness than the law requires, because I have invariably refused to entertain any application for the appointment of a receiver where I was advised that the application had been first filed in some other court of competent jurisdiction having that object in view. How does that principle apply in this case? If no appeal has been taken from the order appointing the receiver in the state court, it could and would have reduced the property to its possession, and no other court could have had the right to interfere with its administration of the property of the defendant. But the statute under and by virtue of which the appointment was made has been construed as above stated, and the question has been determined that the trial court, after a supersedeas bond has been given and approved, is not in custody of the property, and the defendant is entitled to its possession and use, not as a matter of grace, but as a matter of legal right. Consequently, I am at a loss to understand how it can be successfully or seriously contended that in this case, where a receiver had been appointed who had never taken possession of the property, which is admitted. was never in possession of it actually or constructively, and it being admitted that a supersedeas bond had been given and approved, and the district court of Travis county can no longer act in that case for the benefit of the plaintiff or any other person, the state court has the custody of the property of the Waters-Pierce Oil Company, and no other court can afford relief to any other person entitled to it. The contention of the state is that the property is in custodia legis, and for that reason only this court was without jurisdiction and power to appoint the receiver. Let us analyze this proposition, because if it is to be established as the law in this state, and is the law in this state, the effects of it are so far-reaching and disastrous to the business interests of this country that it will be well for every business man in Texas to understand its meaning. Say a bank in this county held a note upon a citizen of Cooke county for $600, secured by a first mortgage lien upon a thousand head of steers, and the note being payable in this county, and for that reason the venue of this court could be invoked, and suit was brought upon it for judgment and foreclosure of the mortgage lien, and for the sale of the cattle; and after judgment had been rendered, the showing was made to the district judge that the defendant was wholly insolvent; that the cattle were within a mile of the Indian Territory line, and the defendant was about to remove them beyond the jurisdiction of the state of Texas, and that it would inflict a great loss upon the judgment creditor, and, upon such representation, the district judge should appoint a receiver to take actual possession of the property. The defendant excepts to this order and appeals from it, and gives to the plaintiff security in double the amount of the principal, interest, and costs, and also executes a supersedeas bond and appeals from the order appointing the receiver. Thereupon the cattle are delivered back to the possession of the defendant in the judgment. The case then goes to the Court of Civil Appeals for revision. In that attitude, say a citizen of Cooke county, where the defendant resides, holds a second-mortgage lien upon the cattle for $5,000, and, the defendant being insolvent, is about to remove the cattle from the state of Texas. The holder of this note brings his suit in the district court of Cooke county, sets up all the facts, recites the first suit and judgment and supersedeas bond, and that said suit is pending on appeal in the Court of Civil Appeals, and that the court in Grayson county is without jurisdiction to afford him any relief because his obligation is payable in Cooke county, and the defendant lives in Cooke county, and, therefore, the litigation in the first suit having been closed, the court in which the receiver was appointed is without jurisdiction to aid him, and, upon proper presentation of the facts, the court in Cooke county appoints a second receiver to take possession of the cattle and hold them subject to the orders and disposition of the court, both of these actions being in state courts. I ask the question: Is there a lawyer in Texas who would for a moment have held that, by reason of the first suit in Grayson

county, and the appointment of a receiver, that court had acquired the actual custody of the defendant's property, and that no other court could, under the state of facts, furnish any relief to the junior lien holder or an unsecured creditor? Would any one have held that the court in Cooke county was trespassing upon the jurisdiction or rights of the court in Grayson county? Most certainly not. What would the court in Cooke county in that state of case do, there being alleged in the bill for the appointment of the receiver the fact of the first lienholder's suit and his priority and superior rights to be first paid? It would do what any court of equity would be bound to do. It would entertain the suit; it would sell the property subject to the first-mortgage lien; or, if it deemed it best, it would sell it clear of liens, and would direct that the first lienholder, whenever his claim was reduced to final judgment, be paid in full; that the second lienholder be paid his debt, if the property was sufficient to pay it, and that any other creditor having an unsecured claim, who might intervene in the case, would be paid as far as the proceeds would go, or, if paid in full, the remainder would be returned to defendant. This is the plain, equitable business rule that governs in this country where there are liens or not liens. A statutory lien has no greater force than a contract lien. One is at least as sacred as the other, and therefore, when the state has a suit asserting a lien, it rests upon the same principles as any other lien, no greater and no less. Some people seem to think that because the state is a litigant it has greater rights than an individual; but such is not the case.

In the case of Fristoe v. Leon & H. Blum, 92 Tex. 80, 45 S. W. 999, the Supreme Court of Texas, through Justice Brown, uses this language: "It is well settled that so long as the state is engaged in making and enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen, but when it becomes a suitor in its own courts or a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual." (Citing many authorities, state and federal.)

Let us present another illustration along the same line as that above. Instead of the second lienholder being a citizen of Cooke county, he is a citizen of the state of Missouri, and exercising his right to sue in either the federal or state court, he institutes his suit in this court, setting up the fact of the first suitor's superior lien and his secondary equities by reason of his second-mortgage lien, and for good and sufficient reasons shows to this court that a receiver should be appointed to preserve his rights, and the court entertains his suit and appoints a receiver. Would any one have held that this court was invading the jurisdiction of the state court? It would not have been presumed any more in that case than it [if] the suit had been instituted in the district court of Cooke county, unless such presumption arose from a feeling of antipathy towards federal courts exercising authority. That could be the only reason, and is not a valid one. Therefore the situation in this case is that the state has a personal judgment. It claims a lien, and the judgment for the money recovery has been suspended in conformity with Texas laws. The order appointing the receiver has been suspended in the manner provided by our statutes, and hence the district court of Travis county is powerless to do anything further in that case because it has been closed. The logic of the state's contention is that, while this is true, yet it has the legal custody of the property, and therefore all other courts are powerless to grant relief. This is an analysis of the state's contention. This cannot be the law in this state, and has never been so held to be by any decision of which I am aware.

It would be ruinous to the business of the state of Texas for such doctrine to be established. If a man were so unfortunate as to be sued, and a judgment obtained against him, and if for any reason a receiver were appointed to take charge of his property, he would be placed in this position: If he did not appeal from the order appointing the receiver, the receiver would take charge of his property, and either conduct the business or sell out his estate, and await an undetermined suit that was pending. If that were done, the merchant's trade and business would be destroyed. If he appealed from the order appointing the receiver, and gave the security that the law requires, and yet it was insisted that his property was in custodia legis, and that no other creditor could secure relief in any court, it would destroy his credit and accomplish his

destruction in advance of a final determination of whether or not he should pay the judgment that had been rendered. This contention is of such far-reaching effect, and so ruinous in its consequences, if adopted as a principle of law, it arises far above the case we have for consideration, and should be discussed with that seriousness and earnestness its dangerous nature demands. It is a new doctrine—one that has never been suggested before in this state as far as I know—and I cannot believe that the courts, no matter what the cause may be, will adopt any such contention. It is not denied that the Waters-Pierce Oil Company, although entitled to the use and possession of its property pending the suit which it is resisting, cannot be operated under existing conditions in this state. The anti-trust law does not make the question depend upon a final adjudication—which the courts would most likely hold to be its meaning—yet what employé is going to risk his liberty upon the possible construction that may be made by the courts upon this statute? It would result in the absolute stoppage of the business of this state, and the Waters-Pierce Oil Company could not secure a person to board a team of mules that belong to it, so complete would be the destruction, for the reason that the same Legislature passed an act by which it was made the duty of every county attorney in Texas to prosecute violators of the law, and provided for a fee of $250 to be divided between the county attorney and district attorney, where both exist in the county, in certain proportions. It is idle to say that the law gives the Waters-Pierce Oil Company the right of possession of its property and its use, and these laws when put into force could absolutely destroy the value of the property, and especially all of it which might be of a perishable nature, and that in advance of a final judgment. If this is the true construction, then you give the defendant against whom a judgment is rendered the shadow of a right, but not its substance. You take this property and destroy it by indirection as effectually as if it had been taken and sold and the title passed from him without legal right. It may be that some people honest in intention think that, because of the Waters-Pierce Oil Company being a trust, it would be proper and legitimate for these results to follow. The Legislature of Texas, the sole source of power, has fixed what the punishment shall be. They have fixed it at a fine of so much per day, and the revocation of its permit to do business in the state. If the judgment rendered in the district court of Travis county is made final, that is the punishment of the Waters-Pierce Oil Company. It will be that it pay the fine and all costs, and its right to do business in the state revoked, and the court of Travis county will have the power to see that the decree is made effectual. That would be the extent of the matter, and as far as the penalty could extend or could be lawfully made to extend, and that after final judgment. But, if the opposite construction is to be the law, its property is destroyed in advance of final judgment, and a penalty has been visited upon the defendant not provided by law, and one which the courts could not visit after final judgment. Can this be the law in a civilized country? The violator of the law should be held to the strictest responsibility, and made to pay the penalties prescribed by the statute. But, no matter how great the feeling may be or the desire may be that other punishment should be inflicted, the law does not prescribe it, and no court will inflict it. Bearing upon the question of whether or not, where a receiver has once been appointed, all other courts are without authority to act, I deem the case of Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660, to be in principle an authority in this case. That was a case arising in the state of Tennessee. June 6, 1892, John Coleman filed suit in the United States Circuit Court for the Eastern District of Tennessee against the Morristown & Cumberland Gap Railway Company and Allison Shaffer & Co., and an order was entered appointing a receiver of the property of the railroad company. The receiver took possession of the property. June 8, 1892, the railroad company appeared and filed a petition for leave to execute a bond for whatever sum might be decreed in favor of complainant, and that the order appointing the receiver be vacated. This petition was sustained, the bond given and approved, and an order entered discharging the receiver. Thereupon the receiver turned the property over to the railroad company, receiving the receipt of its general manager therefor. June 20, 1892, another party filed his petition in the same cause setting up his claim against

the railroad for service rendered as an employé and vice president of the railroad, and for expenses incurred in its behalf. July 4 and 7, 1892, other petitions were filed setting up other claims against the railroad company. July 27, 1892, each of the defendants filed a separate answer to the complainant's bill. No further order was made by the Circuit Court until November 12, 1892, when, as the record shows, the demurrer of the railroad company to the petitions filed July 4 and July 7, 1892, was argued and overruled, and leave given to answer on or before December rules. The record of the proceedings on that day contains this further recital: "On motion of complainant, and it appearing that this cause is properly filed as a general creditors' bill to wind up the affairs of an insolvent corporation, it is ordered by the court that the bill be sustained as such, and that all creditors of said Morristown & Cumberland Gap Railroad Company, and all other persons interested therein, come forward and exhibit their demands, and have themselves made parties to this bill, on or before the 2d Monday of January next, and show in their petitions the nature and extent of their claims, and whether they have security or lien therefor; and, if so, the nature thereof, and the property upon which their liens rest. But parties having suits now pending in other courts against said Morristown & Cumberland Gap Railroad Company for rights of way or other claims or demands may prosecute the same to judgment, and file their judgments in this court as evidence of the amount and character of their demands." There were other recitals not necessary to mention, except that the court was moved for a restoration of the receivership and the appointment of a receiver to take possession and custody of all of the property of the defendant, and a temporary receiver for that purpose was so appointed. November 29, 1892, an amended and supplemental bill was filed, naming as complainants John Coleman, and also the various subsequent intervening petitioners. October 28, 1892, a bill was prepared, addressed to the Hon. John D. Smith, Chancellor, presiding in the chancery court of Morristown, Tenn., setting forth certain judgments in favor of the complainants against the railroad company, its insolvency, as well as that of the firm of Allison Shaffer & Co., the existence of a multitude of unpaid claims, and prayed the appointment of a receiver. Without going through all the details, the state court in October appointed a receiver to take charge of the property of the railroad company. This was done, and the receiver appointed by the state court remained in possession of the property until November 14, 1892, when the receiver appointed by the United States court took actual possession of the property. Thereupon the receiver of the state court applied to the Circuit Court of the United States for possession, and in deciding that question and commenting upon its various phases, Judge Brewer rendering the opinion, the Supreme Court used this language: "While the validity of the appointment made by the Circuit Court on June 6, 1892, cannot be doubted, yet, when that court thereafter accepted a bond in lieu of the property, discharged the receiver and ordered him to turn over the property to the railroad, and such surrender was made in obedience to this order, the property then became free for the action of any other court of competent jurisdiction. It will never do to hold that after a court, accepting surety in lieu of the property, has vacated the order which it has once made appointing a receiver, and turned the property back to the original owner, the mere continuance of the suit operates to prevent any other court from touching that property." The only difference in principle in the case at bar and the one from which I have just quoted is that in the Tennessee case the court entered an actual order of discharge. The case was still pending for the appointment of a receiver, and was so pending when the suit was instituted in the state court and the receiver appointed. In the case at bar there has been no order of the district court of Travis county discharging the receiver, but the statute of this state, and the decisions of this state construing it, deprived him of all power to act pending the appeal, and the court that did appoint him directed him not to take possession of the property, and therefore, whether discharged or not, he could not act, and hence the property was released to the defendant, Waters-Pierce Oil Company, and was the subject of litigation in other courts, if occasion should arise necessitating the same.

Having no desire to trench upon the authority of any state court, I admit,

158 F.—46

for the purpose of this case, that the Waters-Pierce Oil Company is a trust; that it has violated the laws of the state, and is subject to the payment of the judgment of the district court of Travis county. I concede to every court in this state the same correctness of intention that I claim for myself, and in no instance have I knowingly trenched upon their authority, nor would I knowingly do so. I had no thought of so doing in this case, and, notwithstanding all that has been said, I have not yet been able to perceive in what particular I have in any wise interfered with the jurisdiction of the appellate court to hear and determine the questions involved in that suit. Admittedly the property of the Waters-Pierce Oil Company was never in the possession of the state court, was never in its custody, and that its custody was not a question for consideration in determining whether or not the defendant was a trust and was subject to the payment of the penalties prescribed by law, and the revocation of its permit to do business in Texas. I have neither the desire nor the power to interfere with that question. Those are questions for the appellate court to determine, and, if the judgment is affirmed, it should be paid. The rights of the state are correctly set forth in the bill of complaint in this case, and this court is thereby advised of the fact of the judgment; the assertion of a lien; that an injunction exists that the property shall not be moved out of the state of Texas—all of which this court would carefully observe, and in no wise have I interfered with the jurisdiction of the court or any of its orders. Under the opinion and decision of the Court of Civil Appeals at Austin, the state receiver and the Attorney Generals were permitted to apply to this court for all orders that might be deemed proper for the protection of the state court and its jurisdiction. They have demanded at my hands the return of the property to the possession of the Waters-Pierce Oil Company, and that is the only thing demanded. I do not see how that would be complying with any direction of the appellate court, because, if the property is to be returned to the Waters-Pierce Oil Company, it cannot be returned to the custody of the state court, for such custody never existed. As I understand the facts and law of this case, I can only comply with such request. In conclusion, I will state that I acted upon the faith of the Texas laws as construed in the above decisions, and had the legal right, as I thought, to act as I did. What were the motives which impelled this court to appoint a receiver in this case? In brief, they were these: The state had sought to sequester the property of the defendant for the better protection of its judgment. The order of the state court appointing a receiver had been appealed from. The state court could no longer pursue that remedy pending the appeal. I was aware of the fact that almost 85 per cent. of the oil consumed in Texas by railroads, gins, mills, and the people of Texas for the purpose of lighting their homes was supplied by the Waters-Pierce Oil Company, and if its equipments, covering some 216 counties in Texas, were to be stopped and paralyzed, and could not be used for the purpose of distributing oil to the people and industries of Texas that needed it, a great hardship would be visited upon all who used it for illuminating and lubricating purposes. I was also made aware of the fact that many contracts had been made for supplying oil, which could not be complied with under existing conditions, and that the company, although perfectly solvent and doing business in other states, could not perform such contracts in this state, and that it would be subjected to many suits for broken contracts to which there could be no answer, and, in addition thereto, its physical property in Texas would be practically destroyed. Being impelled by these considerations and these only, which, in my judgment, appeal strongly to the sense and conscience of the chancellor, I thought it best, pending the appeal, the state court appointing the receiver being powerless to act, and in keeping with my duty, and to the end that this property should not be destroyed in violation of the Constitution and laws of the United States, and in violation of every principle of common right, that a court of equity should take and preserve it for the benefit of the state of Texas, because it has the superior claim, and to see that the people of Texas should not be subjected to the inconvenience and hardship that would necessarily follow for several months; and that the stockholders' interests should not be destroyed by the destruction of the property and business in Texas, and the suits that could be legally brought against the company for violated contracts. These were the

considerations that moved me to action, and not a desire for jurisdiction nor thought of interfering with the rights of the state courts to hear, determine, and execute their own judgments. It never occurred to me that such results could follow, nor have I yet been able to understand how they could.

In order that there may be no misunderstanding, I now state that, if the assets of this company are administered by this court, the property or its proceeds will be held for the benefit of the state of Texas, in case the security it has should from any cause fail, and said judgment should be affirmed, and the state can secure the benefit of this property to pay its claim in any lawful and proper manner it may elect to employ. The receivership was only intended to meet the conditions that existed pending the appeal, and, if the judgment is affirmed, the proceeds of the property will be available for the use of the state of Texas, if it needs them.

The only question that has disturbed me in the least is this: The state has a lien fixed by statute. I must assume that lien to be valid and enforceable. The suit was first instituted in Travis county, and, if the case is reversed, it will proceed again in Travis county, and the receiver's powers may be held by that court to revive, or an additional order may be put in force. In that event, an apparent conflict would arise between the state and federal courts. This question has not been discussed nor presented to me in argument, and therefore I have no fixed opinion upon the matter. My inclination at this time, in that state of case, would be to surrender the jurisdiction of this property and its control to the state court, as I freely admit it is as competent to handle and preserve the property as this or any other court, and this court only acted because of the inability of that court at that time to act. While, as stated above, this is my present view of the question, yet I do not wish to be understood as so holding at this time, because the question has not yet been discussed, and I would not wish to place myself in the position of making a promise which, upon full argument and understanding of the matter, I could not comply with. I can only repeat what I have heretofore said. If the judgment is affirmed, the proceeds of this property, or the property itself, will be available for the use of the state, if it needs or desires it in the protection and collection of its judgment. If the case is reversed, and the power of the state receiver is revived, an application upon his part to this court for the surrender of the property to his custody will be given due consideration, and, if it can be legally surrendered by this court to the state receiver, it will be most cheerfully done.