## SHIELDS *v.* COLEMAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TENNESSEE.

No. 793.  Submitted January 7, 1895.—Decided March 18, 1895.

The court below, in its order granting the appeal, said: "This appeal is granted solely upon the question of jurisdiction" and made further pro-

visions for determining what parts of the record should be certified to this court under the appeal, under which it subsequently directed the portions of the record to be certified to this court, and the record was prepared accordingly. *Held*, that this was a sufficient certificate of a question of jurisdiction under the provisions of the Judiciary Act of March 3, 1891, c. 517, 26 Stat. 826, 827.

A Circuit Court of the United States has not the power to appoint a receiver of property already in the possession of a receiver duly and previously appointed by a state court, and cannot rightfully take the property out of the hands of the receiver so appointed by the state court.

The mere forcible continuance of possession wrongfully acquired by the Federal court does not transform that which was in the first instance wrongful, into a rightful possession.

THE facts in this case are as follows: On June 6, 1892, in a suit in the Circuit Court of the United States for the Eastern District of Tennessee, brought by John Coleman against the Morristown and Cumberland Gap Railroad Company and Allison, Shafer & Company, an order was entered appointing Frank J. Hoyle receiver of all the property of the railroad company. The bill upon which this order was made alleged that in 1890 the defendant railroad company had contracted with its co-defendants, Allison, Shafer & Company, for the construction of its line of railroad from Morristown to Corryton, a distance of about forty miles, which work was partially completed in February or March, 1892; that there was yet due from the railroad company to Allison, Shafer & Company more than $50,000; that Allison, Shafer & Company were indebted to the complainant for work and labor done in the construction of such railroad; that notice, claiming a lien, had been duly given the railroad company, and that it was insolvent, as were also Allison, Shafer & Company. The prayer was for judgment against Allison, Shafer & Company, that the amount thereof be declared a lien upon the railroad property, and for the appointment of a receiver pending the suit.

In pursuance of this order the receiver took possession of the railroad. On June 8, 1892, the railroad company appeared and filed a petition for leave to execute a bond for whatever sum might be decreed in favor of the complainant and that the order appointing the receiver be vacated. This petition was sustained, the bond given and approved, and an order

entered discharging the receiver. Thereupon the receiver turned the property over to the railroad company, receiving the receipt of its general manager therefor.

On June 20, 1892, T. H. McKoy, Jr., filed his petition in the same case setting up a claim against the railroad company for services rendered as an employé and vice-president of the railroad company, and for expenses incurred on its behalf. On July 4 and July 7, 1892, other petitions were filed setting up further claims against the railroad company.

On July 27, 1892, each of the defendants filed a separate answer to the complainant's bill. No further order was made by the Circuit Court until November 12, 1892, when, as the record shows, a demurrer of the railroad company to the petitions filed on July 4 and July 7 was argued and overruled, and leave given to answer on or before December rules. The record of proceedings on that day contains this further recital:

"On motion of complainant, and it appearing that the bill in this cause is properly filed as a general creditor's bill to wind up the affairs of an insolvent corporation, it is ordered by the court that the bill be sustained as such, and that all creditors of said Morristown and Cumberland Gap Railroad Company and all other persons interested therein come forward and exhibit their demands and have themselves made parties to this bill on or before the 2d Monday of January next and show in their petitions the nature and extent of their claims and whether they have security or lien therefor; and, if so, the nature thereof and the property upon which their liens rest. But parties having suits now pending in other courts against said Morristown and Cumberland Gap Railroad Company for rights of way or other claims or demands may prosecute the same to judgment and file their judgments in this court as evidence of the amount and character of their demands. And the clerk of this court will make publication, notifying all creditors of said Morristown and Cumberland Gap Railroad Company of the contents of this order, which publication will be inserted at least twice a week for the next four weeks in the Knoxville Daily Tribune. And thereupon complainant moved the court for the restoration of the

receivership in this case and the appointment of a receiver to take possession and custody of all the property of said Morristown and Cumberland Gap Railroad Company, and W. S. Whitney is appointed temporary receiver of the railroad and its property, and ordered to take custody and control of said railroad, its operations, and all other property of said railroad company."

On November 29, 1892, an amended and supplemental bill was filed, naming as complainants not merely the original complainant John Coleman, but also the various subsequent intervening petitioners. It is enough to say of this amended and supplemental bill that it stated facts sufficient to justify the appointment of a receiver.

On October 28, 1892, a bill was prepared addressed "to the Honorable John P. Smith, chancellor, etc., presiding in the chancery court at Morristown, Tennessee." This bill was in the name of sundry creditors of the railroad company against it, and other parties, setting forth certain judgments in favor of the complainants against the railroad company; its insolvency as well as that of the firm of Allison, Shafer & Company; the existence of a multitude of unpaid claims, and prayed the appointment of a receiver. This bill having been presented to the Honorable Joseph W. Sneed, one of the judges of the State of Tennessee, he signed the following fiat, as it is called in the practice of that State :

" STATE OF TENNESSEE :

" *To the clerk and master of the chancery court at Morristown :*

"Upon the presentation of the foregoing bill and on consideration of its averments it is ordered :

" 1. That the temporary restraining order prayed for be granted upon complainants executing bond to be approved by the clerk, conditional, as in ordinary injunction cases, in the penalty of ten thousand dollars ($10,000.00).

" 2. That the prayer for a temporary receiver of the Morristown and Cumberland Gap Railroad Company be granted, and James T. Shields, Jr., is hereby appointed such temporary receiver, and he shall, before entering upon the discharge of

his duties, file with the clerk and master a good and sufficient bond, to be approved by the master, in the penalty of twenty thousand dollars ($20,000.00).

"3. Immediately after his qualification said receiver is directed to take possession of said railroad and all other property belonging thereto or in possession of said company by lease or otherwise, and shall accurately inventory same and file a copy of said inventory with the master. Said receiver is directed to operate said road and to take charge of its tolls and incomes and to continue and preserve the same in like condition as at present, if practicable; and to that end he is directed to employ or continue the employment, as justice may demand, all necessary agents and employés whose services are essential to the continued operation of the road or the preservation of its property; and to that end he is authorized to contract, in his official capacity as receiver, for the payment of such reasonable sums as may be necessary to defray the expenses of such services.

"4. It is further ordered that a copy of this order be served upon the defendant, the M. & C. G. R. R. Company, along with other process, and that said company be and appear before the Hon. John P. Smith, presiding chancellor of said division, on the second Thursday, being the 10th day of November, 1892, at 10 o'clock A.M., at chambers, at the court-house, in Rutledge, Tenn., and then and there show any reason which may be made to appear to the court why a permanent receiver shall not be appointed of said railroad company in this cause, and why the temporary restraining order granted herein shall not be made permanent.

"5. In the event that it shall become necessary to issue a writ of possession to put said receiver in the quiet and peaceable possession of all the property of said corporation, it is ordered that the master issue writs of possession, directed to the sheriffs of Hamblen, Grainger, and Knox Counties, for that purpose, commanding said sheriffs to place said receiver in the possession of that portion of said company's property which may be in their several counties.

"Given under my hand this October 28, 1892.

"Jos. W. SNEED, *Judge*."

This fiat was on the same day filed in the office of the clerk of the chancery court, and the receiver therein named, immediately took possession of the railroad property and commenced the operation of the road. His possession continued until November 14, 1892, when the receiver appointed by the Circuit Court of the United States took the property out of his hands.

Notice was thereafter given that on January 7, 1893, an application would be made to the chancellor for the appointment of a permanent receiver, and on that day this order was entered by the chancellor:

" In the Chancery Court of Hamblen County, Tennessee.

" Thomas B. Crosby et al.
*vs.*
" The Morristown & Cumberland Gap Railroad Company
et al.

" Be it remembered that this cause came on for hearing on this January 7, 1893, before the Hon. John P. Smith, chancellor, at 2 o'clock P.M., at chambers, at Jonesboro, upon the motion of the complainants for the appointment of a permanent receiver of the defendant; the Morristown and Cumberland Gap Railroad Company, and notice thereof.

" And it appearing to the court that on October 28, 1892, under the order and fiat of Hon. Joseph W. Sneed, one of the judges of this State, James T. Shields, Jr., was appointed, at the suit of complainants in this cause, temporary receiver of Morristown and Cumberland Gap Railroad Company and all the property of said company or in its possession, by lease or otherwise, and that said receiver so appointed proceeded forthwith to qualify and took possession of the property of said corporation and everything of which it had possession; and it further appearing to the court by an order made thereafter in the United States Circuit Court at Knoxville for the Northern Division of the Eastern District of Tennessee, in the cause of John Coleman *v.* Morristown and Cumberland Gap Railroad Company et al., W. S. Whitney was appointed

receiver of said railway company, and that under orders made by said court in said cause the property of the said railway company was taken from the possession of the receiver of this court and placed in the possession of the receiver of that court; and the court, being of the opinion that to appoint a permanent receiver in advance of a determination of the question of superior jurisdiction would be unseemly and not in conformity with that spirit of comity which exists between the state and Federal courts of concurrent jurisdiction, doth order that said motion for a permanent receiver be entered and continued, with leave to call the same up upon notice at any time after said question of jurisdiction is settled.

"It is further ordered that James T. Shields, Jr., the temporary receiver of said corporation and its property under the order of appointment in this case, intervene in said cause of John Coleman v. The Morristown and Cumberland Gap Railroad Company et al. and there test and contest the question of jurisdiction in such manner and form as he may be advised by counsel, and on application of said James T. Shields, Jr., John K. Shields and Tully R. Cornick are appointed his counsel for that purpose.

"Done at chambers, at Jonesboro, this January 7th, 1893.

"JOHN P. SMITH,

"*Chancellor 1st Div., Tenn.*"


On January 24, 1893, the receiver J. T. Shields, Jr., in obedience to the direction of the chancellor, filed his motion in the Circuit Court of the United States, setting forth the facts herein stated, and praying that court to vacate its order appointing W. S. Whitney receiver of the road, and for an order restoring the possession to him. This motion was on January 30, 1893, overruled, and exception duly taken. Subsequent proceedings were had in the Circuit Court culminating on January 31, 1894, in a final decree, which decree established certain liens, and ordered the property to be sold.

Thereafter an appeal to this court was prayed for and allowed in behalf of the receiver appointed by the state court,

the petition and the order allowing the appeal being in these words:

"Your petitioner, James T. Shields, Jr., suing as receiver of the Morristown and Cumberland Gap Railroad Company, respectfully represents that there is manifest error committed, to the injury of the petitioner, by the final decree pronounced in this cause on the 31st day of January, 1894, and by the interlocutory orders and decrees theretofore pronounced in these ——, in and by which said interlocutory orders and final decrees this court assumed and asserted jurisdiction of the property and effects belonging and constituting the estate of the defendant Morristown and Cumberland Gap Railroad Company as against the lawful custody and possession of this petitioner under orders and decrees theretofore pronounced by the chancery court of Hamblen County, Tennessee, in the cause pending in said chancery court entitled '*Thomas B. Crosby et al.* v. *Morristown and Cumberland Gap Railroad Company et al.*,' under jurisdiction theretofore lawfully exercised and assumed, said chancery court being a court of equity of concurrent jurisdiction with this court, and which said chancery court of Hamblen County, Tennessee, was thereby ousted of the lawful jurisdiction, and this petitioner, as such receiver, became ce prived of the lawful custody of the property and essec o said Morristown and Cumberland Gap Railroad Company, the subject-matter of controversy in the cause then and there pending in said court.

"Wherefore petitioner, James T. Shields, Jr., receiver, etc., considering himself aggrieved, prays an order granting an appeal from said final decree and interlocutory orders, taking and exercising jurisdiction as aforesaid, to the Supreme Court of the United States, as authorized by section 5 of the act of Congress of the United States, approved March 3, 1891, and petitioner herewith files his bond in the penal sum of five hundred dollars, which bond is approved by the Honorable D. M. Key, one of the judges of this court.

"Upon consideration of the petition for appeal to the Supreme Court of the United States filed herein by James T Shields, Jr., as receiver of the M. & C. G. R. R. Co. under ap-

pointment by the chancery court of Hamblen County, Tennessee, it is ordered that said appeal be granted, bond therefor in the penalty of five hundred dollars having been executed and approved by the court.

"It is further ordered that the petition for supersedeas be denied.

"This appeal is granted solely upon the question of jurisdiction, and unless counsel shall agree by stipulation, filed with the clerk, in respect to the portions of the record to be transcribed and filed in said United States Supreme Court under said appeal as prayed and granted, the appellant has leave to present the record to the court on Saturday, the 29th of July inst., for the determination of what portion of the record shall be certified to said Supreme Court under said appeal."

Subsequently the court made the entry suggested in the latter part of this order, and directed the portions of the record to be certified to this court, and under that direction the record was prepared.

*Mr. Heber J. May, Mr. John K. Shields,* and *Mr. Tully R. Cornick* for appellant.

*Mr. Henry H. Ingersoll* for appellees.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The single question presented by this appeal is that of the jurisdiction of the Federal court to appoint a receiver, and take the railroad property out of the possession of the receiver appointed by the state court. In such cases, as was held in *Maynard* v. *Hecht,* 151 U. S. 324, it is essential that the question of jurisdiction alone should be certified to this court from the trial court. But under the authority of *United States* v. *Jahn,* 155 U S. 109, and *In re Lehigh Company,* 156 U. S. 322, the statement in the last order quoted from the record taken in connection with the petition upon which it was founded must be held to be a sufficient certificate. It is not necessary that the word "certify" be formally used. It is sufficient if

there is a plain declaration that the single matter which is by the record sent up to this court for decision is a question of jurisdiction, and the precise question clearly, fully, and separately stated. No mere suggestion that the jurisdiction of the court was in issue will answer. This court will not of itself search, nor follow counsel in their search of the record to ascertain whether the judgment of the trial court did or did not turn on some question of jurisdiction. But the record must affirmatively show that the trial court sends up for consideration a single definite question of jurisdiction. And that is here shown. The petition for an appeal is upon the single ground that the court wrongfully took jurisdiction of the property, because it was then in the possession of the state court, and in the order allowing the appeal it is explicitly stated that "this appeal is granted solely upon the question of jurisdiction," and the court at the same time reserved to itself the right, which it subsequently exercised, of determining what portions of the proceedings should be incorporated into the record sent here for the purpose of presenting this question.

Had the Circuit Court of the United States, when this property was in the possession of the receiver appointed by the state court, the power to appoint another receiver and take the property out of the former's hands? We are of opinion that it had not. For the purposes of this case it is unnecessary to decide whether, as between courts of concurrent jurisdiction, when proceedings are commenced in the one court with the view of the appointment of a receiver, they may be continued to the completion of actual possession, and whether, while those proceedings are pending in a due and orderly way, the other court can, in a suit subsequently commenced, by reason of its speedier modes of procedure seize the property, and thus prevent the court in which the proceedings were first commenced from asserting its right to the possession. *Gaylord* v. *Fort Wayne &c. Railroad*, 6 Bissell, 286–291, cited in *Moran* v. *Sturges*, 154 U. S. 256–270 High on Receivers, 3d ed. sec. 50. Of course, the question can fairly arise only in a case in which process has been served, and in which the express object of the bill, or at least one express

object, is the appointment of a receiver, and where possession by such officer is necessary for the full accomplishment of the other purposes named therein. The mere fact that, in the progress of an attachment or other like action, an exigency may arise, which calls for the appointment of a receiver, does not make the jurisdiction of the court, in that respect, relate back to the commencement of the action.

In *Heidritter* v. *Elizabeth Oil-Cloth Co.*, 112 U. S. 294, 301, a question was presented as to the time that jurisdiction attaches. Mr. Justice Matthews, after quoting from *Cooper* v. *Reynolds*, 10 Wall. 308, and *Boswell's Lessee* v. *Otis*, 9 How. 336, observed : " But the land might be bound, without actual service of process upon the owner, in cases where the only object of the proceedings was to enforce a claim against it specifically, of a nature to bind the title. In such cases the land itself must be drawn within the jurisdiction of the court by some assertion of its control and power over it. This, as we have seen, is ordinarily done by actual seizure, but may be done by the mere bringing of the suit in which the claim is sought to be enforced, which may, by law, be equivalent to a seizure, being the open and public exercise of dominion over it for the purposes of the suit."

Undoubtedly the Circuit Court had authority under the bill filed June 6, 1892, to make the order appointing the receiver and taking possession of the property. Even if it were conceded that the bill was imperfect and that amendments were necessary to make it a bill complete in all respects, it would not follow that the court was without jurisdiction. The purpose of the bill — the relief sought — was, among other things, the possession of the property by a receiver to be appointed by the court, and when the court adjudged the bill sufficient, and made the appointment, that appointment could not be questioned by another court, or the possession of the receiver thus appointed disturbed. The bill was clearly sufficient to uphold the action then taken.

While the validity of the appointment made by the Circuit Court on June 6, 1892, cannot be doubted, yet, when that court thereafter accepted a bond in lieu of the property,

discharged the receiver, and ordered him to turn over the property to the railroad, and such surrender was made in obedience to this order, the property then became free for the action of any other court of competent jurisdiction. It will never do to hold that after a court, accepting security in lieu of the property, has vacated the order which it has once made appointing a receiver and turned the property back to the original owner, the mere continuance of the suit operates to prevent any other court from touching that property.

It is true that the Circuit Court had the power to thereafter set aside its order accepting security in place of the property and enter a new order for taking possession by a receiver, yet such new order would not relate back to the original filing of the bill so as to invalidate action taken by other courts in the meantime. Accepting a bond and directing the receiver to return the property to the owner was not simply the transfer of the possession from one officer of the court to another. The bond which was given was not a bond to return the property if the judgment to be rendered against the contractors was not paid, but a bond to pay whatever judgment should be rendered. It was, therefore, in no sense of the term a forthcoming bond. The property ceased to be *in custodia legis.* It was subject to any rightful disposition by the owner or to seizure under process of any court of competent jurisdiction.

The intervening petitions filed on June 20, July 4, and July 7 are not copied in the record, having been omitted therefrom by direction of the Circuit Court. Evidently, therefore, there was nothing in them which bears upon the question before us, and doubtless they were simply intervening petitions, claiming so much money of the railroad company and containing no reference to the appointment of a receiver.

But it is said that the receiver has no such interest in the property as will give him a standing in the Circuit Court to petition for the restoration of the property to his possession, or to maintain an appeal to this court from an order refusing to restore such possession. This is a mistake. He was the officer in possession by appointment of the state court, the

proper one to maintain possession and to take all proper steps under the direction of the court to obtain the restoration of the possession wrongfully taken from him. It is a matter of every-day occurrence for a receiver to take legal proceedings, under the direction of the court appointing him, to acquire possession of property or for the collection of debts due to the estate of which he is receiver.

With reference to the contention that all of the parties plaintiffs in the suit in the state court have come into the Federal court, so that in fact the receiver appointed by the state court no longer represents any one — *stat nominis umbra* — it is sufficient to say that it is not borne out by the record. It is true that the plaintiffs in this case filed a petition in the Federal court in which it was alleged that all the parties plaintiffs in the state court had appeared in the Federal court, and that all the claims of these parties except one of Mellon & Sons, who had two claims, had been presented and allowed, and that Mellon & Sons in their intervening petition had set up one of their claims for allowance, and averred that they were prosecuting the other to judgment in the state court, and that they would, when judgment was obtained thereon, also file that for allowance. But the record shows that the order prayed for in this petition was denied by the Circuit Court without any finding as to the truth of the facts therein alleged. We cannot assume, therefore, as against the application of the state receiver, that the allegations in that petition are true. Further than that, the Circuit Court, in directing what should be incorporated into the record to be sent up on this appeal, directed that there should be inserted a "memorandum of all petitions and pleadings filed, giving dates of petitions without setting out same, down to the final decree, except in cases where directed to be copied in full." In pursuance of that order the clerk incorporated in this record a memorandum of the intervening petitions, and in that memorandum there is no mention of any petition on the part of any of the plaintiffs in the state court except Mellon & Sons. It thus affirmatively appears that up to the date of the final decree only one of the several plaintiffs in the state court

had come into the Federal court. While it is true that in the final decree there is an entry of allowances in favor of these parties, yet there is nothing to show that these allowances were made upon the application of such plaintiffs, or that the amounts allowed to them were the amounts which they claimed, unless this can be implied from the order therein declaring a lien upon the allowances in favor of the counsel of such parties for their services in obtaining the several recoveries. Conceding all that may be inferred from this order, or from anything else that appears in the record, it remains beyond dispute that one claim of Mellon & Sons, for $84,000, is still pending and undetermined in the suit in the state court. But further, the question of right on the part of the petitioner antedates the final decree, and he stands in the Federal court backed by the order of the state court appointing him receiver, and directing him to press this application. If it were true that all the plaintiffs in the state court had abandoned their suit in that court, the remedy was to call the attention of that court to the fact and have an order entered, setting aside the appointment of a receiver, or directing the discontinuance of this application. We cannot, in this indirect way, pass judgment upon the action of that court.

It is objected that Judge Sneed had no authority to make the appointment of a receiver, and that the appointment was not made by the chancery court, nor by the chancellor at chambers, nor by any other chancellor or Circuit Court judge of the State of Tennessee. The record does not disclose of what court Judge Sneed was a judge. But we find in 91 Tenn. v, a list of the judges of that State in the year 1892, and the courts of which they were judges. In that list is the name of J. W. Sneed as judge of the Criminal Court of Knox County. That court has, as appears from the statutes, exclusive criminal jurisdiction in that county. It also has common law jurisdiction, and the practice and pleadings in all civil actions are the same as prescribed for the Circuit Courts of the State. It is held by one judge, who takes the same oath of office as other judges. He is paid out of the state treasury, as they are paid, and has power to interchange with

them in official work. (Secs. 163, 164, 165, 166, Milliken and Vertrees' Code of Tenn. 1884.)

In the same code sections 4714 and 4715 read as follows:

"4714. The judges and chancellors shall have interchangeable and concurrent jurisdiction to grant injunctions, attachments, and all other extraordinary process, issuable out of and returnable to any of the circuit or chancery courts of this State.

"4715. Upon making the requisite fiats for, and granting such extraordinary process, it shall be the duty of the judge or chancellor to enclose the papers accompanying the application and the order made, in a sealed envelope, directed to the clerk of the court to which the fiat is directed, which envelope shall be opened only by the clerk or his deputy."

Obviously the action taken by Judge Sneed was under the authority of these two sections, and they seem broad enough to sustain it. No decision of the Supreme Court of the State has been called to our attention bearing upon this question, or construing "judges" to mean only "Circuit Court judges." At any rate, the validity of his action was recognized by the chancellor, who treated his fiat as one made by proper authority; and as the chancery court had unquestioned jurisdiction over all proceedings in equity, including bills for receivers, we must assume that Judge Sneed's order was valid, and the appointment of a temporary receiver by him authorized by the laws and practice of the State.

It is further objected that the proceedings in the Federal court have moved on to a final decree by which various liens have been determined, and that it would be a great hardship to now declare the order appointing the receiver, and assuming possession of this property, beyond the jurisdiction of the Federal court. It is a sufficient reply to this that all the parties who sought to enforce their rights in the state court have not come into the Federal court, and submitted their claims to its jurisdiction. Some are still pursuing their remedy in the forum which they selected, and whatever of hardship there may be, whatever of expense may result, must fall upon the parties who have thus wrongfully secured the taking away of the possession of this property from the custodian rightfully

appointed by the state court. The mere forcible continuance of possession by the Federal court does transform that which was in the first instance wrongful into a rightful possession.

*The case, therefore, must be remanded to the Circuit Court for further proceedings not inconsistent with this opinion.*