**1ST NATIONAL CREDIT CORPORA-
TION, a Nevada Corporation,
Plaintiff,**

v.

**Richard A. VON HAKE, and all other persons unknown claiming any right, title, estate or interest adverse to plaintiff's ownership of certain real property, Defendants.**

Civ. No. C 79–0718.

United States District Court,
D. Utah, C. D.

April 10, 1981.

Robert M. McRae, McRae & DeLand, Salt Lake City, Utah, for plaintiff.

Ken Chamberlain, Richfield, Utah, H. Ralph Klemm, and T. Quentin Cannon, Salt Lake City, Utah, for defendants.

## MEMORANDUM OPINION and ORDER

JENKINS, District Judge.

Defendant Richard A. Von Hake's Motion to Dismiss the complaint in the above-entitled action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure came on for hearing before this Court on November 10, 1980. After hearing the arguments offered by counsel in this matter, this Court took the motion under advisement. Having reviewed the memoranda and exhibits presented by counsel for this Court's examination, and having given consideration to the arguments of counsel as well as to the relevant legal authorities, and good cause appearing therefor, this Court now finds and rules as follows:

On April 9, 1979, Interlake Corporation, a holder of certain notes and mortgages executed by Richard A. Von Hake which had fallen into default, commenced mortgage foreclosure proceedings in the District Court for the Sixth Judicial District, Kane County, State of Utah. This action was entitled *Interlake Corporation v. Richard A. Von Hake*, No. 1603. Von Hake failed to answer the complaint in that action and a judgment by default was entered on May 3, 1979, decreeing foreclosure upon the property affected by the mortgages. The property was sold by the county sheriff at a foreclosure sale held on June 4, 1979, to the highest bidder, 1st National Credit Corporation, plaintiff herein.

Exactly six months following the sale, on December 4, 1979, Von Hake tendered a sum of money to the county sheriff amounting to $96,000, ostensibly in exercise of his asserted statutory right of redemption. See Utah Code Ann. (1953) § 78–37–6 (1977); Rule 69(f), Utah Rules of Civil Procedure. Three days later, 1st National Credit Corporation filed its complaint herein commencing this proceeding to quiet title in the relevant property, commonly known as the Seeps Ranch, as against adverse claims by Von Hake, Tex R. Olsen, Ken Chamberlain, and any other interested but unknown adverse claimants to the property. Von Hake was served with a summons and a copy of the complaint in this proceeding by a deputy county sheriff for Kane County on January 15, 1980. In the meantime, on January 7, 1980, Von Hake had filed a complaint commencing a quiet title action against 1st National Credit Corporation and others in the District Court of the Sixth Judicial District, Kane County, State of Utah, that action being entitled *Richard A. Von Hake v. Ed Thomas and 1st National Credit Corporation*, No. 1643. On January 17, 1980, Von Hake filed a motion in state court to set aside the default judgment

entered against him in the *Interlake* case, *supra*, pursuant to Rule 60(b) of the Utah Rules of Civil Procedure. Additionally, Von Hake moved that the state district court direct that the $96,000 tendered to the county sheriff be held by the clerk of that court pending resolution of the conflicting claims presented in *Von Hake v. Thomas, et al.*, No. 1643.[1] Both motions came on for hearing before the state district court on February 7, 1980, at which time argument was heard and the court denied the motion to set aside the default judgment, while granting the request that the $96,000 be held by the clerk of the state court. On its own motion, the court orally appointed 1st National Credit Corporation as receiver of the Seeps Ranch property pending resolution of *Von Hake v. Thomas, et al.*, No. 1643.[2] For whatever reason, the action of the state district court on February 7, 1980, was not memorialized in writing in the record until September 19, 1980.[3] By that time, this Court had long since entered summary judgment in favor of claimants Tex R. Olsen and Ken Chamberlain, see Judgment and Decree of July 2, 1980, and had otherwise proceeded on its orderly schedule of pre-trial conferences. On October 24, 1980, counsel for Von Hake filed his motion to dismiss this action in favor of the state court proceedings in *Von Hake v. Thomas, et al.*, No. 1643, more than five months after 1st National Credit Corporation had filed a motion to dismiss the state action in favor of proceedings in this Court. See Defendant's Motion to Dismiss (No. 1643, filed May 7, 1980). The state court has deferred ruling on that motion pending a hearing at the convenience of counsel. See Minute Entry for July 3, 1980, No. 1643.

Within the chain of events summarized above can be discerned a "race for the courthouse" the outcome of which may have determined the jurisdiction of this Court over the subject-matter of this action relative to the District Court for the Sixth Judicial District, Kane County, State of Utah. A review of the applicable federal law proves necessary to identify the events that are decisive of this contest of adjudicative speed.

## I. FEDERAL COURTS, STATE COURTS AND CONFLICTS OF JURISDICTION

■ Under Utah law, a quiet title action is a proceeding at law expressly authorized by statute. Utah Code Ann. (1953) § 78–40–1 (1977); *Ash v. State of Utah*, 572 P.2d 1374, 1376 & n.1 (Utah 1977); *Holland v. Wilson*, 8 Utah 2d 11, 327 P.2d 250, 251 (1958). The purpose of the action is to judicially quiet an existing title against an adverse or hostile claim by one or more others. *State of Utah v. Santiago*, 590 P.2d 335, 337 & n.2 (Utah 1979). Federal courts may also hear and determine actions to quiet title within their equitable jurisdiction, provided that the applicable jurisdictional prerequisites are met. See C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 1070, 1250, 1358, 3566, 3635, 3702 (1976); *Reynolds v. Crawfordsville First National Bank*, 112 U.S. 405, 410, 5 S.Ct. 213, 216, 28 L.Ed. 733 (1884). Federal proceedings to quiet title or to remove a cloud from title may be commenced without the usual insistence upon personal service of process. 28 U.S.C. § 1655 (1976). Unavoidably, actions to quiet title to specific land or other property are sometimes filed in both federal and state courts, since

---

1. The claims stated by Von Hake as plaintiff in *Von Hake v. Thomas, et al.*, No. 1643, are substantially similar to those alleged in his Counterclaim as filed herein on February 15, 1980, including allegations of fraud as against Thomas and 1st National.

2. At the time that the complaint in *Von Hake v. Thomas, et al.*, was filed, counsel also filed a notice of *lis pendens* on the Seeps Ranch property. That document recites that the complaint in No. 1643 had been filed on January 3, 1980,

which though incorrect, is still a date subsequent to the commencement of the federal proceedings herein.

3. Nothing in the exhibits offered to this Court demonstrates that a certified copy of the appointment of the receiver of the Seeps Ranch property has been recorded in the office of the county recorder for Kane County, a condition precedent to the vesting of real property in a receiver under Utah law. Rule 69(p), Utah Rules of Civil Procedure.

638

both possess original jurisdiction of the cause of action. A jurisdictional conflict over control of the property in litigation results.

■ As a general rule, the pendency of the same cause of action in a state court between the same parties is not a ground for abatement of an action in federal court. *Butler v. Judge of the United States District Court*, 116 F.2d 1013, 1015 (9th Cir. 1941). At least in cases within the *in personam* jurisdiction of the court, the parties may pursue their remedy in both courts at the same time. As the United States Supreme Court has explained in *Kline v. Burke Construction Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922):

> [A] controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings of the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case.

Accord, *Boynton v. Moffat Tunnel Improvement Dist.*, 57 F.2d 772, 778 (10th Cir. 1932) cert. denied, 287 U.S. 620, 53 S.Ct. 20, 77 L.Ed. 538. To hold, for example, that the federal court should in all cases give way to the state court would in effect deprive persons of diverse citizenship of a right given to them by the United States Constitution and the federal statutes to proceed in the federal courts. *McClelland v. Carland*, 217 U.S. 268, 281, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910); *Butler v. Judge of the United States District Court, supra*. Only "special

and peculiar circumstances" could justify such deference. *Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 618, 56 S.Ct. 600, 601, 80 L.Ed. 920 (1936), see 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 4241 *et seq.* (1978).

■ In contrast, however, it has been uniformly held that where the proceedings are within the *in rem* or *quasi in rem* jurisdiction of both courts, the court, whether state or federal, first obtaining jurisdiction of the *res* should proceed to final judgment and that the court of concurrent jurisdiction should dismiss the action, or at least stay its proceedings and await the conclusion of litigation in the court having legal possession of the *res*. *Donovan v. City of Dallas*, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1949); *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 465–67, 59 S.Ct. 275, 280–81, 83 L.Ed. 285 (1939); *Butler v. Judge of the United States District Court, supra*. In *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935), the Supreme Court expressed the rule in these terms:

> [I]f the two suits are *in rem* or quasi *in rem*, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, . . . and to protect the judicial processes of the court first assuming jurisdiction, . . . the principle, applicable to both federal and state courts, is established that *the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other*. [Citations omitted and emphasis added.]

Where a federal court has already acquired jurisdiction of the *res*, "the exercise by the state court of jurisdiction over the *res* necessarily impairs, and may defeat, the jurisdiction of the federal court, already at-

tached." *Kline v. Burke Construction Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922).[4] The converse of the rule is equally true, where jurisdiction is first obtained by the state court and may be impaired or defeated by the subsequent exercise of federal judicial power. *Id. Smith v. Humble Oil & Refining Co.*, 425 F.2d 1287, 1288 (5th Cir. 1970), cert. denied 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138. See 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3631 (1976) and cases cited therein.

The preferred analytical approach to problems such as these is set forth in *Moore's Federal Practice*:

> The first inquiry, therefore, is whether the two actions are of such nature that both are essentially *in rem*, demanding control and disposition of the *res*; for if one action is *in personam*, even though adjudicating, without physically controlling, a right in the *res*, this conflict does not exist. On the other hand, an action is *in rem* and is excluded by another court's prior jurisdiction of the *res* where in the subsequent suit a cause is pleaded and relief demanded which require control of the *res*, even though also seeking to establish personal liability ...

1A Moore's Federal Practice ¶ 0.214 at 2502 (2d ed. rev. 1980) (footnote omitted). Unless the proceedings in both the state and federal courts herein are determined to be *in rem* as to the same property, both courts may proceed to adjudicate the actions at their own pace. A federal court may even adjudicate the rights of parties in the *res* though the *res* itself be within the prior jurisdiction of a state court, as in adjudicating a claim against an estate in federal court where the assets of the estate are under the control of a state court:

> [W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, *Penn Co. v. Pennsylvania*, ..., it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court. *Commonwealth Trust Co. v. Bradford*, ...

*Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) (citations omitted); accord, *Miller v. Miller*, 423 F.2d 145, 147 (10th Cir. 1970); 1A Moore's Federal Practice ¶ 0.222 (2d ed. rev. 1980), and cases discussed therein.

The questions to be resolved herein are (1) which of the proceedings in the District Court for the Sixth Judicial District, Kane County, State of Utah is an action *in rem* and presents a possibility of jurisdictional conflict with the proceedings in this Court; (2) does such a jurisdictional conflict exist; and (3) if so, how shall that conflict be resolved.

## II. JURISDICTIONAL STATUS OF THE STATE COURT PROCEEDINGS

### A. *Interlake Corp. v. Von Hake* No. 1603

■ Without serious question, a proceeding to foreclose upon a mortgage such as was this one is an action *in rem* or *quasi in rem*, under Utah law. See, e. g., *Boucofski v. Jacobsen*, 36 Utah 165, 104 P. 117, 122 (1909). Of necessity the court must take control of the property foreclosed upon and judicially determine its disposition. See *First National Bank of Columbus v. Charles Broadway Rouss, Inc.*, 61 F.2d 489 (5th Cir. 1932), *cert. denied*, 287 U.S. 670, 53 S.Ct. 314, 77 L.Ed. 577 (1933). This the Utah court did, granting a judgment of foreclo-

---

4. A federal court proceeding *in rem* or *quasi in rem* may even enjoin concurrent state proceedings, judicial or otherwise, in aid of its exclusive jurisdiction and control of the *res*. 28 U.S.C. § 2283; *Hyde Const. Co. v. Koehring Co.*, 388 F.2d 501, 508 & n.5 (10th Cir. 1968); *Continental Bank & Trust Co. v. Apodaca*, 239 F.2d 295 (10th Cir. 1956); 1A Moore's Federal Practice ¶ 0.218 (2d ed. rev. 1980); see also, *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 135, 62 S.Ct. 139, 144, 86 L.Ed. 100 (1941) (judicial exception to old anti-injunction statute, 28 U.S.C. § 379 (1940), in aid of federal court jurisdiction over *res*).

sure decreeing the sale of the Seeps Ranch property, which sale was subsequently completed.

Defendant Von Hake herein asserts that the jurisdiction *in rem* of the Utah district court over the Seeps Ranch realty, unquestionably obtained by that court in *Interlake*, continues in that court for the purposes of the post-judgment motions in *Interlake* as well as for *Von Hake v. Thomas & First National Credit Corp.*, No. 1643. A careful review of the chain of events surrounding the Seeps Ranch property against the background of the applicable law demands the conclusion that this view is erroneous.

█ It is a well-settled principle of the law governing the exercise of judicial power that the jurisdiction of a court over the subject-matter of a case is commenced with the filing of a complaint, petition, or other pleading and continues through the entry of the court's judgment on the merits, and beyond, until that judgment is executed or otherwise satisfied. As Chief Justice John Marshall said in *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 22, 6 L.Ed. 253 (1825):

> The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process subsequent to the judgment, in which jurisdiction is to be exercised. It is, therefore, no unreasonable extension of the words of the [Judiciary] act [of 1789], to suppose an execution necessary for the exercise of jurisdiction.

Accord, *Wilson v. Schnettler*, 365 U.S. 381, 384, 81 S.Ct. 632, 634, 5 L.Ed.2d 620 (1961); *Rio Grande Railroad Co. v. Gomila*, 132 U.S.

478, 483, 10 S.Ct. 155, 156, 33 L.Ed. 400 (1889); *Covell v. Heyman*, 111 U.S. 176, 183, 4 S.Ct. 355, 358, 28 L.Ed. 390 (1884); *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 197, 18 L.Ed. 768 (1867); *Ke-Sun Oil Co. v. Hamilton*, 61 F.2d 215, 219 (9th Cir. 1932); *In re Terrace Superette, Inc.*, 229 F.Supp. 371, 375 (W.D.Wis.1964); 1A Moore's Federal Practice ¶ 0.216 (2d ed. rev. 1980). This is certainly true of a court's jurisdiction over property under its control. "It is elementary that when a court has once acquired jurisdiction of property, it will retain such jurisdiction until its judgment or decree is complied with, ..." *Mayer v. Laible*, 291 F. 564, 566 (C.C.A. 1st Cir. 1923).

█ The release of property by a court for the purposes of disposal by sale withdraws that property from the jurisdiction and control of the court upon consummation of the sale.[5] The property ceases to be *in custodia legis*, and is subject to any rightful disposition by the owner[6] or to the jurisdiction and process of any court of competent jurisdiction. See *Shields v. Coleman*, 157 U.S. 168, 179, 15 S.Ct. 570, 574, 39 L.Ed. 660 (1895). For example, where a state court has entered a final order approving a sale of stock by that court's receiver, its jurisdiction over the subject-matter has terminated, allowing a federal court to exercise jurisdiction to determine the validity of the sale and direct the proper disposition of the property. *Griggs v. Baumer*, 130 F.2d 899 (3d Cir. 1942).

█ Once released from the custody of the court, property may subsequently be

---

**5.** A court may, within its discretion, retain jurisdiction of the property even though sold. The intent to do so, however, must appear on, or reasonably be inferred from the record. E. g., *St. Louis—San Francisco R. Co. v. Byrnes*, 24 F.2d 66, 73 (8th Cir. 1928).

**6.** Under Utah law, the rights of a purchaser in property acquired at a sale pursuant to a foreclosure upon a mortgage takes the property subject to the statutory right of redemption. Utah Code Ann. (1953) § 78–37–6 (1977), Rule 69(f), Utah Rules of Civil Procedure; see *Tanner v. Lawler*, 6 Utah 2d 84, 305 P.2d 882 (1957), 2 Summary of Utah Real Property Law

§§ 9.234 *et seq.* (B.Y.U. Legal Studies 1978). Redemption by the judgment debtor effectively terminates the sale and he is restored to his estate. *Tanner v. Lawler, supra*, 6 Utah 2d at 89, 305 P.2d at 885, *Bennion v. Amoss*, 530 P.2d 810 (Utah 1975). The redemption right does not directly invoke any additional judicial action in aid of the parties; it operates directly under statutory procedure. See Rule 69(f)(5), Utah Rules of Civil Procedure; *Mollerup v. Storage Systems International*, 569 P.2d 1122, 1124 (Utah 1977) (right of redemption "to be exercised in strict accord with statutory terms").

brought back under its control, but the recapture of the *res* does not relate back in priority to the original taking of custody so as to invalidate action taken by other courts in the meantime. *Shields v. Coleman, supra,* 157 U.S. at 179, 15 S.Ct. at 574. Logically, if a federal court has taken jurisdiction of real property sold at foreclosure sale pursuant to the final judgment of a state court, that federal jurisdiction should not be defeated by later post-execution motions filed in the foreclosure proceeding which seek to revive the once-exhausted jurisdiction of the state court. This is particularly true of motions to set aside default judgments under Rule 60(b) of the Utah Rules of Civil Procedure. The Rule expressly provides that the filing of such a motion "does not affect the finality of a judgment or suspend its operation." A Rule 60(b) motion appeals to the equitable powers of a court to set aside its own judgment for good cause shown, and even in a foreclosure proceeding does not without more require that the court reassume *in rem* jurisdiction over the property disposed of in satisfaction of the judgment. In fact, the general rule is that a court of equity acts *in personam.* See e. g., *Miller v. Miller,* 423 F.2d 145, 147 (10th Cir. 1970).

The jurisdiction of the District Court for the Sixth Judicial District, Kane County, State of Utah over the realty known as the Seeps Ranch was exhausted by completion of the sheriff's sale pursuant to the judgment of foreclosure in the *Interlake* litigation. Defendant Von Hake cannot now revive that *in rem* jurisdiction as a bar to proceedings in this Court through the device of an unsuccessful motion in the state proceeding filed weeks after this case was commenced.

## A. Von Hake v. Thomas & 1st National Credit Corp. No. 1643

Actions seeking to quiet title to real property are variously styled as actions *in personam,* e. g., *State ex rel. Truitt v. District Court of the Ninth Jud. Dist.,* 44 N.M. 16, 96 P.2d 710, 714–15, 126 A.L.R. 651 (1939), as actions *quasi in rem,* e. g., *Humble Oil & Ref. Co. v. Sun Oil Co.,* 191 F.2d 705, 718 (5th Cir. 1951), as actions *in rem,* e. g., *Prudential Ins. Co. v. Zimmerer,* 66 F.Supp. 492, 494 (D.Neb.1946), or as actions *in personam* as well as *in rem,* e. g., *Dillon v. Heller,* 39 Kan. 599, 18 P. 693, 695 (1888). See 74 C.J.S. (Quieting Title) § 7 at 18. The case law defining the action under Utah law is sparse. The United States Circuit Court of Appeals for the Eighth Circuit [7] held the Utah action to be *in rem* in *Boston Acme Mines Corp. v. Salina Canyon Coal Co.,* 3 F.2d 729, 733–34 (C.C.A. 8th Cir. 1925), following the prior rule of that Circuit as to quiet title actions. See *Zimmerman v. So Relle,* 80 F. 417, 420, 25 C.C.A. 518, 521 (C.C.A. 8th Cir. 1897).

The *Summary of Utah Real Property Law* notes that service of process in an action to quiet title is governed by the usual rules, except that the action "will proceed *in rem* against those unknown persons" not personally served with process following adequate recitals in the pleadings and service by publication. 1 Summary of Utah Real Property Law § 1.25 at 12 B.Y.U. Legal Studies 1978); see *Parker v. Ross,* 117 Utah 417, 217 P.2d 373, 21 A.L.R.2d 919 (1950); *Bowen v. Olson,* 122 Utah 66, 246 P.2d 602 (1952). Consistent with the function of an action to quiet title as against persons known or unknown and the doctrine of *stare decisis,* this Court concludes that the Utah statutory action to quiet title is an

---

7. To avoid confusion as to lines of appellate jurisdiction in *Boston Acme Mines Corp., supra,* this Court notes that under the Evarts Act, or Circuit Court of Appeals Act of 1891, Act of March 3, 1891, 26 Stat. 826, federal courts of appeals were established in nine designated circuits. Utah was located in the Eighth Circuit under that scheme. In 1929, Utah was transferred to the newly created Tenth Circuit pursuant to the Act of February 28, 1929, c. 363, 45 Stat. 1346, where it has since remained. This Court is, as a general rule, required to follow the decisions of the Court of Appeals for this Circuit, 1B *Moore's Federal Practice* ¶ 0.402[1] at 61–62 & nn. 28–30 (2d ed. rev. 1980), whatever its numerical designation may be or have been.

action *in rem*, or *quasi in rem*,[8] requiring either a state or federal court to obtain jurisdiction over the property in dispute before proceeding to adjudication on the merits. Further, consistent with the reasoning of the Supreme Court of Kansas in *Dillon v. Heller, supra,* this Court notes that the action is *in personam* as to those parties served personally with process as well as being *in rem* as to their interests, if any, in the property.[9]

As a consequence of this determination, it may seem at first glance that a conflict exists between the *in rem* jurisdiction of this Court and the *in rem* jurisdiction of the state court regarding the Seeps Ranch property and the claims surrounding it. This proves accurate to a certain extent. To the extent that the plaintiff's complaint herein seeks to confirm its title to the *res* and extinguish the claims of all others, whether named parties or unknown persons, this Court must possess the jurisdiction over the property that is needed to act. To this extent, the concurrent jurisdiction of the state court would be excluded, and to this much this Court is entitled under the governing federal law.

 As discussed above, in a conflict such as this the court that first assumes jurisdiction of the *res* has adjudicative priority over the other. *Princess Lida of*

Thurn & Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939); *Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935); *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 477, 56 S.Ct. 343, 347, 80 L.Ed. 331 (1936); *Miller v. Miller,* 423 F.2d 145, 147 (10th Cir. 1970). For the purposes of determining this priority, jurisdiction of the *res* is deemed to vest in the court "whose jurisdiction and process are first invoked by the filing of the bill." *Penn General Casualty Co. v. Pennsylvania, supra,* 294 U.S. at 196, 55 S.Ct. at 389. The United States Court of Appeals for the Tenth Circuit has long recognized this rule:

> Courts have long since resolved the conflict between state and federal courts of concurrent jurisdiction involving the same subject matter by decreeing that the first court whose jurisdiction and processes is invoked by the filing of a suit, is treated as in constructive possession of the res and authorized to proceed in the cause.

*Continental Bank & Trust Co. v. Apodaca,* 239 F.2d 295, 297 (10th Cir. 1956). The constructive possession of the *res* accorded the first court under this rule retains priority even in cases where the second court takes *actual* possession of the *res,* as by a receiver. See *Bryan v. Speakman,* 53 F.2d 463, 466–67 (5th Cir. 1931); see also *Harkin*

---

8. While some courts and commentators prefer the designation *quasi in rem* in defining the jurisdiction exercised in a quiet title action affecting rights of specific persons in particular property, an action under the Utah statute may settle rights in property as against the whole world, justifying the *in rem* terminology. See Restatement 2d (Conflicts), ch. 3, Introductory Note to Topic 2, at 191 (1971). Further, *quasi in rem* jurisdiction in the context of an action to affect "the interests in the thing of particular persons only," *id.,* should be distinguished from the type of action in which "the plaintiff does not assert that he has an interest in the thing, but asserts a claim against the defendant personally and seeks, by attachment or garnishment, to apply the thing, to the satisfaction of his claim against the defendant." *Id.;* see *Shaffer v. Heitner,* 433 U.S. 186, 196–212, 97 S.Ct. 2569, 2575–2583, 53 L.Ed.2d 683 (1977) (*quasi in rem* jurisdiction is "traditionally" based on this type of ground. *Id.* at 196, 97 S.Ct. at 2575).

9. This distinction between those parties personally served and those interested persons, their identity and/or whereabouts being unknown, who are bound by the *in rem* judgment pursuant to statute, see Utah Code Ann. (1953) § 78–40–12 (1977); 28 U.S.C. § 1655 (1976), harmonizes with the deferential consideration afforded by law to those given notice only through constructive service. Under Utah law, judgment by default may not be taken against them in a quiet title proceeding. Utah Code Ann. § 78–40–13 (1977). Under federal statute, those not personally notified may enter their appearance within one year after final judgment and have it set aside as against them as a matter of right. 28 U.S.C. § 1655. The *res judicata* effect is also limited in purely *in rem* proceedings to interests in the specific property under litigation. *Id.*

v. *Brundage*, 276 U.S. 37, 43, 48 S.Ct. 268, 271, 72 L.Ed. 457 (1928); [10] cf. *United States v. Augspurger*, 452 F.Supp. 659 (W.D.N.Y. 1978). In this case, the plaintiff filed its complaint with this Court a month prior to the time that defendant Von Hake filed his complaint with the state court. Therefore, it is this Court rather than the state court that may exercise jurisdiction over the Seeps Ranch property and the rights of the parties therein.[11]

■ To a great degree, however, the claims alleged in Von Hake's complaint in the state proceeding deal with matters that are properly considered within the *in personam* jurisdiction of that court. The claim for fraudulent misrepresentation and the claim for recission or cancellation of a deed are considered *in personam* actions under both federal and Utah law. See e. g., *Miller v. Miller*, 423 F.2d 145, 147 (10th Cir. 1970) (action for cancellation of instrument *in personam*); *Hart v. Sansom*, 110 U.S. 151, 155, 3 S.Ct. 586, 588, 28 L.Ed. 101 (1884) (same); *Adamson v. Brockbank*, 112 Utah 52, 185 P.2d 264, 275–76 (1947) (cancellation

of deed for fraud or mistake within equity [*in personam*] jurisdiction). Any claim for the $96,000 now on deposit with the clerk of the state court could also arguably be determined within the *in personam* jurisdiction of either court, *Commonwealth Trust Co. v. Bradford*, 297 U.S. 613, 619, 56 S.Ct. 600, 602, 80 L.Ed. 920 (1935), *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939), as could any claim for breach of contract. *Southwestern Bank & Trust Co. v. Metcalf State Bank*, 525 F.2d 140 (10th Cir. 1975). As noted previously, state and federal courts with concurrent jurisdiction of *in personam* claims may independently proceed to adjudicate them so long as they do not depend in any way upon possession or control of any property within the exclusive *in rem* jurisdiction of one or the other, either for the claim's determination or for the granting of relief. *Southwestern Bank & Trust Co., supra*, at 143; *Boynton v. Moffat Tunnel Improvement Dis.*, 57 F.2d 772, 778 (10th Cir. 1932), cert. denied, 287 U.S. 620, 53 S.Ct. 20, 77 L.Ed. 538.

10. "However, not all prior action by the state court is invalid, and a state officer or receiver appointed by the state court, while without jurisdiction of the *res*, has official authority to surrender property to the federal court and to receive it back again when the federal court relinquishes it. [*Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935)]" 1A Moore's Federal Practice ¶ 0.217 at 2518 & n.8 (2d ed. rev. 1980). 1st National Credit Corporation, plaintiff herein and court-appointed receiver in the state court, cf. Note 3, *supra*, is likely the appropriate party from which this Court could secure actual custody of the Seeps Ranch property, either by reason of 1st National's status as purchaser or as receiver. See *Boatmen's Bank of St. Louis v. Fritzlen*, 135 F. 650, 666 (C.C.A. 8th Cir. 1905) (court with actual custody of *res* may retain it until court with superior concurrent jurisdiction requests possession).

11. While the doctrine of *Princess Lida* and related cases is most often said to turn on subject-matter jurisdiction, there is some indication that the doctrine is more a matter of comity, "a prudential doctrine in which a second court with concurrent jurisdiction will exercise its discretion to defer to another court for the sake of comprehensive disposition of rights in a particular piece of property or in a fund." It has been said that a dismissal under the doc-

trine "is not for lack of jurisdiction as a federal court, but because of the general principles of jurisprudence and of the rules governing the action generally of courts of concurrent jurisdiction in their relations to each other." *Boston Acme Mines Corp. v. Salina Canyon Coal Co.*, 3 F.2d 729, 733 (C.C.A. 8th Cir. 1925) (citations omitted); cf. *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939) ("The doctrine is necessary to the harmonious cooperation of federal and state tribunals" [footnote omitted]); *Covell v. Heyman*, 111 U.S. 176, 182–83, 4 S.Ct. 355, 358–59, 28 L.Ed. 390 (1884). This fairly abstract concern could conceivably affect the propriety of granting a stay as opposed to ordering a dismissal of a federal action in favor of a state proceeding under the *Princess Lida* doctrine. Compare *Butler v. Judge of the United States District Court*, 116 F.2d 1013, 1015 (9th Cir. 1941) (stay held appropriate) with *Smith v. Humble Oil & Ref. Co.*, 425 F.2d 1287, 1288 (5th Cir. 1970) cert. denied, 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138, (per curiam holding order of dismissal appropriate). The disposition of the priority question herein has rendered unnecessary a consideration of whether this court must refrain from acting for jurisdictional reasons, or should refrain from acting for prudential ones.

The District Court for the Sixth Judicial District, Kane County, State of Utah, may proceed in *Von Hake v. Thomas & 1st National Credit Corp.*, No. 1643, "so far as may be without creating a conflict concerning the possession of the property, and then be stayed until the proceedings in [this] court have been concluded ...," *Boatmen's Bank of St. Louis v. Fritzlen*, 135 F. 650, 667 (C.C.A. 8th Cir. 1905) (citations omitted); accord, *Boston Acme Mines Corp. v. Salina Canyon Coal Co.*, 3 F.2d 729, 735 (C.C.A. 8th Cir. 1925), or this court otherwise relinquishes jurisdiction in the exercise of its sound discretion. *Levy v. Lewis*, 635 F.2d 960, 963–66 (2d Cir. 1980), see also *Butler v. Judge of the United States District Court*, 116 F.2d 1013, 1016 (9th Cir. 1941) (stay of proceedings in favor of *in rem* jurisdiction of another court not an abuse of discretion). Since Von Hake has asserted substantially similar *in personam* claims in his Counterclaim filed herein, this Court may likewise proceed with the orderly adjudication of those claims. *Southwestern Bank & Trust Co., supra.*[12]

## III. DISCRETIONARY STAY OR DISMISSAL

While not raised expressly by the defendant's motion to dismiss, the memoranda submitted by counsel have briefly touched upon the policy expressed by the United States Supreme Court in *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) to the effect that in particular cases, the federal courts should decline to adjudicate cases concurrently with state proceedings when considerations of "[w]ise judicial administration giving regard to the conversation of judicial resources and comprehensive disposition of litigation," would justify a stay or dismissal of the federal proceedings. *Id.*, 424 U.S. at 817, 96 S.Ct. at 1246.

The Court in *Colorado River* was careful to distinguish deference of this sort from the more traditional principles of abstention. See, e. g., C. Wright, Law of Federal Courts §§ 52, 52A (3d ed. 1976). The circumstances permitting dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration, Justice Brennan wrote, "are considerably more limited than the circumstances appropriate for abstention." 424 U.S. at 818, 96 S.Ct. at 1246. The Court cited cases such as *Princess Lida* as one such circumstance, and briefly listed the factors that might disclose other such circumstances:

> In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, cf. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 [67 S.Ct. 839, 91 L.Ed. 1055] (1947); the desirability of avoiding piecemeal litigation, cf. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 [62 S.Ct. 1173, 1175, 86 L.Ed. 1620] (1942); and the order in which jurisdiction was obtained by the concurrent forums, *Pacific Live Stock Co. v. Oregon Water Bd.*, 241 U.S. 440, 447 [36 S.Ct. 637, 640, 60 L.Ed. 1084] (1916). No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. See *Landis v. North American Co.*, [299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153], *supra*, at 254–255 [57 S.Ct. at 165–166]. Only the clearest of justifications will warrant dismissal.

Among the "clearest of justifications" in *Colorado River* was the perceived policy of Congress that water rights adjudications should not be handled in a piecemeal fashion, and that federal reserved water rights

---

12. This Court, if necessary, may issue an injunction in aid of its jurisdiction of the action *in rem* to bar further state court proceedings on that subject-matter, but may not do so on the *in personam* claims, at least not without a finding that further proceedings on those claims in the state court will as a practical matter impair the exercise by this court of its jurisdiction over the Seeps Ranch property. *Hyde Construction Co. v. Koehring Co.*, 388 F.2d 501, 508 (10th Cir. 1968). No need for such an injunction appears on the record at this point.

may be joined in an existing state adjudication to allow consistent dispositions of property in a unified proceeding. Further, the state action in *Colorado River* was already pending at the time the federal suit was filed, and was in a court more convenient to the 1,000 defendants named in the suit.

No such policy or similar complexities can be found here.

Recognizing "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River, supra*, 424 U.S. at 817, 96 S.Ct. at 1246; *England v. Medical Examiners*, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964); *McClellan v. Carland*, 217 U.S. 268, 281, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257 (1821), compelling reasons must be asserted and proven to justify dismissal of a case in the posture of the action herein under the principles of *Colorado River*. Abstention would certainly be inappropriate. As the Supreme Court notes in *Meredith v. Winter Haven*, 320 U.S. 228, 236, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943):

> Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine.

No specialized, ongoing state regulatory scheme is present here that would be adversely affected by this federal proceeding, *e. g., Burford v. Sun Oil Co.*, 319 U.S. 315, 327, 63 S.Ct. 1098, 1104, 87 L.Ed. 1424 (1943), nor is the determination of rights in realty a subject-matter traditionally reserved exclusively to state jurisdiction, *e. g., Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946) (probate), *Levy v. Lewis*, 635 F.2d 960, 963–66 (2d Cir. 1980) (regulation of insurance); *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890) (domestic relations [dictum]). In fact, the original jurisdiction of the federal district courts is specially tailored by the Judicial Code to meet the needs of a quiet title action commenced in the posture of the complaint herein.[13] See 28 U.S.C. § 1655 (1976). Similarly, no compelling reasons present themselves to justify dismissal of this action under *Colorado River*, nor to justify a stay of these proceedings under its principles. See Comment, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River*, 44 U.Chi.L.Rev. 641, 642 (1977) ("The 'exceptional circumstances' language suggests that the Court disapproves the readiness with which the lower courts have granted stays.").

Based upon the foregoing findings, reasoning and conclusions, this Court must now act.

IT IS HEREBY ORDERED that defendant Richard A. Von Hake's Motion to Dismiss for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, be and is hereby DENIED on the ground set forth above.

---

13. Federal courts have routinely decided actions to quiet title under state law since the early years of the Republic. See *e. g., Reynolds v. Crawfordsville First National Bank*, 112 U.S. 405, 410, 5 S.Ct. 213, 216, 28 L.Ed. 733 (1884); *Clark v. Smith*, 38 U.S. (13 Pet.) 195, 203, 10 L.Ed. 123 (1839); *Wilson v. Mason*, 5 U.S. (1 Cranch) 44, 2 L.Ed. 29 (1801). To defer jurisdiction in favor of a subsequently filed state court action on the same claims simply because the state action is concurrent, without more, would effectively withdraw actions affecting rights in property from the diversity jurisdiction vested in the federal district courts by statute. 28 U.S.C. § 1332 (1976). Congress has made no such withdrawal, and until it does, this Court shall exercise its "virtually unflagging obligation ... to exercise the jurisdiction given" it. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).